# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ASCION, LLC, D/B/A REVERIE, | |
| Plaintiff, | |
| v. | Civil No. 2:15-cv-12067-DPH-EAS |
| TEMPUR SEALY INTERNATIONAL, INC. (F/K/A TEMPUR-PEDIC INTERNATIONAL INC.) AND TEMPUR-PEDIC MANAGEMENT, LLC, | District Judge Denise Page Hood |
| | Magistrate Judge Elizabeth A. Stafford |
| Defendants. | JURY TRIAL DEMANDED |

## PLAINTIFF'S OPENING *MARKMAN* BRIEF

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ i

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

ARGUMENT...................................................................................................... 7

   A.  The "two-way wireless communications" terms ........................................... 9

   B.  "code key" ('457 Patent, Claim 20) ..........................................................14

   C.  "the adjustable bed controller further adapted to initiate a communication from the adjustable bed controller to the handheld remote control to indicate that the adjustable bed controller has responded to the position recall command" ('328 Patent, Claims 1, 13) ....................................................................17

   D.  "wood" ('366 Patent, Claims 1, 10, 13, 14, 25)...........................................20

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*AAMP of Florida, Inc. v. Automotive Data Solutions, Inc.,*
  No. 8:13-cv-2019-T-35, 2015 WL 6672257 (M.D. Fla. July 22, 2015) ............12

*In re Am. Academy of Science Tech Center,*
  367 F.3d 1359 (Fed. Cir. 2004) ........................................................................8

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
  406 F.3d 1365 (Fed. Cir. 2005) ......................................................................19

*Berg Tech. v. Foxconn Int'l, Inc.,*
  185 F.3d 884 (Fed. Cir. 1999) ........................................................................12

*Dayco Prods., Inc. v. Total Containment, Inc.,*
  258 F.3d 1317 (Fed. Cir. 2001) ......................................................................16

*Dayco Prods., Inc. v. Total Containment, Inc.,*
  329 F.3d 1358 (Fed. Cir. 2003) ........................................................................8

*FenF, LLC v. Taylor Gifts, Inc.,*
  No. 10-14351, 2013 WL 1499515 (E.D. Mich. Apr. 11, 2013) .....................3, 4

*Hologic, Inc. v. Senorx, Inc.,*
  No. C-08-00133, 2009 WL 416571 (N.D. Cal. Feb. 18, 2009) ........................12

*Hysitron Inc. v. MTS Sys. Corp.,*
  No. 07-1533, 2009 WL 1151984 (D. Minn. Apr. 28, 2009) ............................12

*IGT v. Bally Gaming Int'l, Inc.,*
  659 F.3d 1109 (Fed. Cir. 2011) ........................................................................8

*Intervet Inc. v. Merial Ltd.,*
  617 F.3d 1282 (Fed. Cir. 2010) ......................................................................22

*In re Johnston,*
  435 F.3d 1381 (Fed. Cir. 2006) ......................................................................18

*Lewmar Marine, Inc., v. Barient, Inc.,*
  827 F.2d 744 (Fed. Cir. 1987) ..........................................................................8

ii

*Merck & Co. v. Teva Pharm. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2004) ........................................................................13

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
  No. CIV. A. 1:05-CV2482, 2006 WL 6142860 (N.D. Ga. Sept. 18, 2006),
  *aff'd*, 695 F.3d 1285 (Fed. Cir. 2012) ....................................................16-17, 21

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..........................................................................7

*Phoenix Licensing, L.L.C. v. Advance Am.*,
  No. 2:15-CV-1367, 2016 WL 6217180 (E.D. Tex. Oct. 25, 2016) .............18, 19

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ........................................................................13

*Power-One, Inc. v. Artesyn Techs., Inc.*,
  599 F.3d 1343 (Fed. Cir. 2010) ........................................................................12

*Prolitec, Inc. v. Scentair Techs., Inc.*,
  807 F.3d 1353 (Fed. Cir. 2015) ...................................................................13, 18

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  563 F.3d 1358 (Fed. Cir. 2009) ........................................................................12

*Rowe Int'l Corp. v. Ecast, Inc.*,
  500 F. Supp. 2d 891 (N.D. Ill. 2007) ..........................................................16, 21

*Teleflex, Inc., v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ..............................................................7, 8, 24

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ............................................................................7

## FEDERAL STATUTES

35 U.S.C. § 112 .....................................................................................................3

ME1 24923753v.2

## INTRODUCTION

Ascion, LLC, *d/b/a/* Reverie, which is based in Bloomfield Hills, develops, manufactures, and sells sleep systems—that is, adjustable beds, mattresses, and related accessories. *See* www.reverie.com. Reverie has so far obtained 77 patents for its innovations in this field. Defendants Tempur Sealy International and Tempur-Pedic Management (collectively "Tempur") compete with Reverie and, as Reverie alleges, infringe at least the seven patents asserted in this case. For purposes of this brief, the seven patents can be grouped into three categories:

(1) Patents directed to various aspects of controlling adjustable beds via a remote control: U.S. Pat. Nos. 8,682,457 ("the '457 Patent"); 8,869,328 ("the '328 Patent"); 8,565,934 ("the '934 Patent"); 8,046,116 ("the '116 Patent"); and 8,909,357 ("the '357 Patent").[1]

(2) A patent directed to structural components of adjustable bed frames, U.S. Patent No. 9,044,366 ("the '366 Patent").

(3) A design patent, U.S. D720,553 ("the D553 Patent").

Reverie proposes only four terms for construction. Though long, the patents are relatively straightforward and written in plain terms without much technical

---

[1] The '457, '328, '934, and '116 Patents trace their lineages back to a common provisional application, No. 60/825,607, filed September 14, 2006. As such, they share a common disclosure and, in some cases, common claim terms. The '357 Patent is unrelated but, like the four other patents, is also directed to aspects of controlling adjustable beds via remote controls.

1

jargon and thus need little interpretation.  Nonetheless, Tempur proposes 21 terms, four of which overlap with Reverie's terms (indicating that these four are the only ones that really matter). Twenty-one terms are simply too many to brief and argue in a coherent manner.  Reverie thus moved to compel Tempur to limit its terms and also to stay briefing pending resolution of the issue.  *See* Dkt. 47 and 48.  The Court set July 6 for a hearing (Doc. 49) but has not yet stayed briefing.  Reverie thus submits this brief under a reservation of rights.  Filing this brief does not moot the need to limit the terms.  Here are Reverie's four terms for construction:

1.     "Two-way wireless communication," which appears in asserted Claim 20 of the '457 Patent in the phrase "capable of two-way wireless communication" and in asserted Claim 1 of the '328 Patent in the phrase "the two-way wireless communication system adapted to."

2.     "Code key," which appears in Claim 20 of the '457 Patent.

3.     "The adjustable bed controller further adapted to initiate a communication from the adjustable bed controller to the handheld remote control to indicate that the adjustable bed controller has responded to the position recall command," which appears in asserted Claims 1 and 13 of the '328 Patent.

4.     "Wood," which appears in each asserted claim of the '366 Patent (*i.e.*, Claims 1, 10, 13, 14, and 25).

As for Tempur's additional 17 claim terms, Tempur alleges that eight are indefinite.  *See* Dkt. 46, *Joint Claim Construction Statement* ("JCCS") at 4-18. Whether a term is indefinite under 35 U.S.C. § 112, ¶ 2 is typically determined during claim construction.  *See FenF, LLC v. Taylor Gifts, Inc.*, No. 10-14351, 2013 WL 1499515, at *4 (E.D. Mich. Apr. 11, 2013) (Hood, D.J.).  Because indefiniteness is a validity challenge, and because the patents are presumed to be definite and otherwise valid, Tempur bears the burden of proving indefiniteness by clear and convincing evidence.  *Id*.  As such, it is up to Tempur to go first, and Reverie will respond, if necessary, in its responsive brief due on June 23.

Likewise, Tempur proposes another nine unique terms for construction (in addition to the eight allegedly indefinite terms).  But these terms have their plain meaning or are otherwise simple enough to understand and thus need no construction.  Reverie will reserve its arguments until the response period, after Tempur explains why these terms merit further construction.[2]

## BACKGROUND

Reverie's patents are generally directed to various aspects of adjustable bed technology.  As noted above, several of the patents concern methods and systems for controlling the adjustable bed via a remote control, and others are directed to

---

[2]   An appendix of all asserted claims, with all currently disputed terms highlighted, accompanies this brief as Exhibit A.  Reverie has also attached each patent (Exhs. B-H), although only three--the '457, '328, and '366--figure in this opening brief.

the assembly or design of the adjustable beds themselves.  The "Background" section of the '357 Patent describes a "typical" adjustable bed:

> A typical adjustable bed may consist of a wood decking for each of the sections of the bed connected together with hinges to allow the various positions  between the sections. There are actuators connected between the bed frame and the wood decking for moving the adjustable sections into user-desired positions. . . .  Some adjustable beds may use wooden on plastic slats to support the mattress instead of a solid wood platform.

'357 Patent at 1:42-51.

Reverie sought to improve on the typical adjustable bed. For instance, Reverie identified a trend towards increased use of technology in the home and an unmet need for deploying these new technologies with adjustable beds.  To wit:

> Associated with the trend for users to spend more time in sedentary positions, such as in bed, is a trend toward increase use of technology in home and medical environments, including in rooms where users have adjustable furniture. Such technology includes increasingly sophisticated computer and networking technology, entertainment technology, information technology, and the like.  While many existing adjustable beds provide the basic requirements of moving sections to positions that are required by a user, a need exists for adjustable furniture that works in better association with other technologies that are capable of being deployed in the environments in which the furniture is used.

*Id*. at 2:4-15. As such, Reverie developed systems and methods for controlling adjustable beds and associated items (*e.g*., massage units) with smart phones and other then-emerging technologies.  *See, e.g*., '357 Patent at 4:27-31; '457 Patent at 8:5-9.  The first group of Reverie's patents are directed to interactions between a

4

remote control (which could be, for instance, a smartphone or tablet) and the electronics or mechanisms that adjust the bed. For example, a remote control using Wi-Fi transmits signals to a controller (also called a "control box") beneath a bed and "on receiving the instructions/control signals, the control box may adjust the frame position of the adjustable bed." '357 Patent at 71:29-40.

Figure 17A from the '357 Patent depicts a very simplified diagram of a remote control interacting with a controller to adjust a bed frame:



FIG. 17A

Furthermore, "the control box may coordinate the electronic requirements of the electronic facility… [and] … may interface with the receiver, remote, … power

supply, modular controls, wire harness, and the like." '457 Patent at 17:11-16.  In

other words, the controller could receive commands from a remote control and

feed those commands to electro-mechanical components that adjust the position of

the adjustable bed.  In addition, as seen in Figure 1 from the '457 Patent, which is a

schematic or "block diagram of an adjustable bed facility and associated

components" ('457 Patent at 8:54-55), the remote and controller could also control

other functions or components, such as a massage unit built into a bed or a lamp:



Fig. 1

Different Reverie patents are directed to different improvements. For example, the '457 Patent is generally directed to an adjustable bed with a controller that could communicate with a remote via various two-way wireless communication protocols. The '357 Patent is generally directed to systems for coordinating the movement of two side-by-side adjustable beds, such as when two twin beds are arranged to form a king-size bed. The '934 and '166 Patents concern other aspects of the control systems, such as bed positions stored in memory. The '366 Patent, however, focuses more on the actual structure of adjustable beds, such as the assembly and composition of the frame, skeleton, and actuator. Finally, the D553 Patent concerns a design of an adjustable bed.

## ARGUMENT

Claims alone define patented inventions. Thus, claim construction begins and ends with the words of the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Courts must indulge a "heavy presumption" that the words of the claim carry their ordinary meaning. *Teleflex, Inc., v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (citation omitted). After forming an understanding of the words of the claims, a court may then consult the specification and prosecution history to provide the necessary context. *Vitronics*, 90 F.3d at 1582. A term, however, cannot be restricted to a particular example in

7

the specification or prosecution history unless the inventor has explicitly defined the term or disclaimed a broader scope. *See, e.g., Teleflex Inc.,* 299 F.3d. at 1328.

The difference between Reverie's and Tempur's proposed constructions is that Reverie's constructions agree with the claims, specification, and prosecution history (the "intrinsic" evidence), while Tempur's constructions do not. Consistency is key. As detailed below, Tempur has confined the terms to isolated examples in the intrinsic record while ignoring others. Tempur has also ignored claim terms, thus effectively reading them out of the claims. Tempur's approach violates the rule that every claim term has meaning and cannot be ignored. *See, e.g., Dayco Prods., Inc. v. Total Containment, Inc.,* 329 F.3d 1358, 1370 (Fed. Cir. 2003) (reversing construction because district court read out a claim term); *Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 749 (Fed. Cir. 1987) ("The word 'only,' however, is there and may not be read out of the claims"). Tempur would thus have this Court rewrite the claims, which is improper. *See IGT v. Bally Gaming Int'l, Inc.,* 659 F.3d 1109, 1116-17 (Fed. Cir. 2011).

Importantly, the patent specification is not some cafeteria buffet from which a litigant may pick and choose passages to suit its hoped-for construction. Rather, the patent must be read as a whole. *In re Am. Acad. of Sci. Tech Ctr.,* 367 F.3d 1359, 1367 (Fed. Cir. 2004). Tempur's constructions selectively ignore disclosures in the specifications and thus fail to read the patents as a whole.

8

### A. The "two-way wireless communications" terms

| REVERIE'S CONSTRUCTION | TEMPUR'S CONSTRUCTION |
|---|---|
| a system in which each node is able to, but need not, directly or indirectly transmit and receive a wireless signal. The wireless signal may include, but is not limited to, infrared (IR), wireless USB (WUSB), ultrawideband (UWB), radio frequency (RF), cellular, Wi-Fi (IEEE 802.11), and Bluetooth signals or communication protocols | **[as to "capable of two-way wireless communication with," '457 Patent, Claim 20]:** wirelessly communicate/ communicating back and forth with<br><br>**[as to "two-way wireless communication system," '457 Patent, Claim 20]:** system for wirelessly communicating back and forth between the controller and the handheld remote control<br><br>**[as to "the two-way wireless communication system," as part of "two-way wireless communication system adapted to communicate," '328 Patent, Claims 1, 13]:** system for wirelessly communicating back and forth |

Reverie asserts Claim 20 of the '457 Patent and several of its dependent claims. Claim 20 (with terms for construction underlined) is directed to the following system:

20 . A system comprising:

an adjustable bed having machine-adjustable articulated portions;

a controller for the adjustable bed, the controller including a wireless interface, the controller <u>capable of two-way wireless communication</u> with a handheld remote control, wherein the handheld remote control is communication matched to the adjustable bed controller with a <u>code key</u> indicating that commands can be received and executed therebetween; and

the handheld remote control capable of:

transmitting a control signal to the adjustable bed controller using the two-way wireless communication system; and

providing feedback to a user on the handheld remote control to indicate the success of the command.

Reverie also asserts, *inter alia*, Claims 1 and 13 of the '328 Patent. Both claims are directed to control systems for adjustable beds and include the following limitation: "a two-way wireless communication system adapted to communicate between a handheld remote control and an adjustable bed controller."

Reverie's proposed construction has three components. First, the construction lists examples of various communications protocols that could be used for two-way wireless communication, such as Bluetooth, Wi-Fi, and the like. The specification makes clear that "two-way wireless communications" is not limited to any one particular two-way wireless communication technology:

In an embodiment, the wireless technology may include Bluetooth, ultra-wideband (UWB), wireless USB (WUSB), IEEE 802.11, cellular, *or the like*.

'457 Patent at 17:56-58 and '328 Patent at 17:48-50 (emphasis added);[3] *see also* '457 Patent at 18:48-50 and '328 Patent at 18:38-40 ("the wireless communication [between the remote and control box] may use a radio frequency (RF), infrared (IR), Bluetooth, *or the like*") (emphasis added).

---

[3] IEEE 802.11 is an industry standard specification for what is better known as Wi-Fi. *See* http://standards.ieee.org/about/get/802/802.11.html; https://www.wi-fi.org.

Second, the communication between the controller and the remote need not be direct, as Tempur's proposed construction implies, but instead may be routed through an intermediary, such as a Wi-Fi router, server, or other networking device. In this regard, Tempur has ignored the teaching of the specification. For instance, the patents teach that "[i]f the remote communicates using a wireless technology, the communication may be with the receiver 130 and the receiver 130 may pass the command request to the control box 134." '328 Patent at 18:40-43. The patent anticipates that the wireless communication could occur through a network, such as a "LAN, WAN, Internet, intranet, peer-to-peer, or other network." '328 Patent at 26:53-58; *see also* 17:50-54 ("various controlled functions … may be able to communicate using the wireless technology, <u>may use an intermediate wireless receiver</u>, or the like") (emphasis added); 17:55-58 ("the control box 134 wireless communication may use a wireless network protocol that may include peer-to-peer communication, master/slave communication, as hub, as a server, or the like").

Third, Reverie's construction makes clear that the remote and controller may, but need not in practice, communicate via two-way wireless protocols. This construction flows directly from the claim terms "capable of" and "adapted to." Specifically, as seen above, Claim 20 of the '457 Patent recites that the controller is "*capable of* two-way wireless communication." Similarly, the claims of the '328 Patent recite "a two-way wireless communication system *adapted to*"

11

communicate between the remote and controller.  In the art of patent drafting, the terms "capable of" and "adapted to" typically mean "has the ability" to perform a function but is not required to perform that function.  *See, e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., 563 F.3d 1358, 1369-70 (Fed. Cir. 2009) (construing "said first magnetic members capable of engaging second magnetic member" to mean "the first magnetic members have the ability to magnetically attract the corresponding second magnetic members"); *Hysitron Inc. v. MTS Sys. Corp.,* No. 07-1533, 2009 WL 1151984, at *15 (D. Minn. Apr. 28, 2009) (construing "capable of deflection" to mean "the central plate is capable of deviation from a starting position").  The term "adapted to" is often construed in the same way.  *Berg Tech. v. Foxconn Int'l, Inc.*, 185 F.3d 884, 1999 WL 96414, at *3 (Fed. Cir. 1999) ("term 'adapted to' is often used in claim drafting to indicate 'capable of'"); *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348-49 (Fed. Cir. 2010) ("adapted to" non-limiting and means "capable of"); *AAMP of Florida, Inc. v. Auto. Data Solutions, Inc.,* No. 8:13-cv-2019-T-35, 2015 WL 6672257, at *11-13 (M.D. Fla. July 22, 2015) ("adapted to" only required capability); *Hologic, Inc. v. Senorx, Inc.*, No. C-08-00133, 2009 WL 416571, at *15-16 (N.D. Cal. Feb. 18, 2009), *supplemented*, 2009 WL 4254049 (N.D. Cal. Nov. 24, 2009), and *rev'd in part*, 639 F.3d 1329 (Fed. Cir. 2011) ("adapted to

contact tissue" and "adapted to conform the tissue" require capability to contact and conform, but do not require actual contact or conformation).

Reverie's proposed construction is consistent with the patent specifications. For example, the specifications use the permissive word "may" each time they discuss such communication. For example: "[i]n an embodiment, the remote may communicate to the receiver 130 and the receiver may transmit the received user command request to the control box 134" ('328 Patent at 17:13-16) and "the control box 134 may interface with the receiver 130, remote 148." '328 Patent at 17:5-6. This use of non-limiting, permissive terms requires that the system be capable of two-way communication but not that it actually perform two-way communication in use. *See Prolitec, Inc. v. Scentair Techs., Inc.*, 807 F.3d 1353, 1358-61 (Fed. Cir. 2015) ("may" is permissive and non-limiting).

Tempur ignores these terms and, as such, effectively reads them out of the claims. But they exist and cannot be ignored. This is a critical distinction because to ignore this "capability" wording violates the general rule of claim construction that each term has meaning. *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored"); *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2004) ("claim construction that gives meaning to all the terms of the claim is preferred over one that does not"). Reverie's

13

proposed construction honors and helps clarify the capability-based nature of the terms, whereas Tempur's construction reads *out* the capable of / adapted to terms entirely, thus, in effect, reading in new required functions that are not present.

**B. "code key" ('457 Patent, Claim 20)**

| REVERIE'S CONSTRUCTION | TEMPUR'S CONSTRUCTION |
|---|---|
| any indicator that allows a remote control to pair with an adjustable bed controller | **[as part of "code key indicating that commands can be received and executed therebetween"]:**<br><br>unique identifier included at the beginning of, the end of, or as part of the transmission of a control command |

Claim 20 of the '457 Patent recites that "the handheld remote control is communication matched to the adjustable bed controller with a <u>code key</u> indicating that commands can be received and executed therebetween."

Reverie proposes the only construction of "code key" that is consistent with the claim wording, the specification, and the prosecution history of the '457 Patent—namely, "**any indicator that allows a remote control to pair with an adjustable bed controller**." Tempur's construction wrongly suggests that the code key is transmitted each and every time a user issues a command to the bed (*e.g.*, raise, lower, etc.). But neither the claims nor the specification impose any restriction on the type of indicator or when the code key is transmitted. Reverie, on the other hand, bases its construction directly on the specification read as a whole, along with the relevant discussion of the code key in the prosecution

14

history.  According to the specification, the code key may be "any indicator" that allows the remote and controller to pair and may consist of a word, a number, or any other type of identification:

> In an embodiment, the remote 148 and receiver 130 may be communication matched by the use of a code key.  The code key may be ***any indicator*** that may be interpreted by the remote 148 and receiver 130 that commands may be received and executed between the remote 148 and receiver 130.  In embodiments, the code key may be a number, a word, a serial number, a bed identification, a remote identification, a user identification, ***or any other identification*** known to both the remote 148 and the receiver 130, all an indication that communications should be received.

'457 Patent at 17:34-43 (emphasis added).   Further, the prosecution history supports Reverie's use of the word "pair."   *See* Ex. I, '457 Patent Prosecution History, Amendment and Reply of July 2, 2012, at 7-8 ("[T]he applicant has disclosed and claims techniques for using a code key to uniquely ***pair*** specific adjustable beds (or more specifically, adjustable bed controllers) with specific remote controls") (emphasis added).

Rather than base its proposed construction on the claim wording, or even embodiments in the specification, Tempur's proposed construction imports something brand new into the claims—specifically, that the code key must be "included" with every transmission of a "control command."  There is no basis in the claims for that reading.  First, Claim 20 merely recites that the remote "***is*** communication matched" to the controller but says nothing about the remote and

controller becoming communication matched as part of a "transmission of a control command."   Indeed, the claims are silent on, or agnostic as to, when the matching happens.  The matching could happen during a command or, indeed, well before any command is given.  As a matter of patent law, if a claim is silent on a structure or function, it cannot be imported into the claim.  *See, e.g.*, *Dayco Prod., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) ("adding limitations to claims not required by the claim terms themselves, or unambiguously required by the specification or prosecution history, is impermissible").

Second, Tempur improperly relies on a single sentence from the specification to limit the claim.  But Tempur either misreads that sentence or purposely ignores two key phrases in that sentence.  Further, Tempur reads into the sentence words that are not there.  Apparently, Tempur relies on the teaching that "[t]he code key *may be* transmitted as the beginning of the communication, the end of the communication, as part of the communication *or the like*."  '457 Patent at 17:43-46 (emphasis added).   First, Tempur ignores that the code key "may be" transmitted during a communication.  As noted above, the word "may" is permissive, not limiting.  Second, use of "or the like" indicates that  there are other possibilities.  *See Rowe Int'l Corp. v. Ecast, Inc.*, 500 F. Supp. 2d 891, 905 (N.D. Ill. 2007) (noting that phrases like "such as" or "or the like" appended to a list in a specification broaden the list); *Outside the Box Innovations, LLC v. Travel Caddy,*

*Inc.*, No. 1:05-CV2482O, 2006 WL 6142860, at *9 (N.D. Ga. Sept. 18, 2006), *aff'd*, 695 F.3d 1285 (Fed. Cir. 2012) (same).

Third, this sentence does not use the term "control command."  There is no basis for Tempur's proposed construction.

**C. "the adjustable bed controller further adapted to initiate a communication from the adjustable bed controller to the handheld remote control to indicate that the adjustable bed controller has responded to the position recall command" ('328 Patent, Claims 1, 13)**

| REVERIE'S CONSTRUCTION | TEMPUR'S CONSTRUCTION |
|---|---|
| the adjustable bed controller is able to, but need not, indicate to the remote control that it has responded to the position recall command | the adjustable bed controller further adapted to initiate a communication from the adjustable bed controller to the handheld remote control to indicate that the adjustable bed controller has successfully completed the position recall command |

Reverie's construction of this term is consistent with the claim wording and specification and, unlike Tempur's construction, does not improperly read in unsupported limitations.   Specifically, Tempur's construction ignores the specification and reads into the claim that the communication must indicate that the controller "has successfully completed" the command.

First, Reverie's construction honors the term "adapted to," which, as noted above, typically means "able to, but need not" in the art of patent drafting.  This construction is also supported by the specification.  Indeed, the specification

ME1 24923753v.2

discusses communication between the adjustable bed controller and the remote using permissive and non-limiting language, such as "may." For example, the specification states "the control box 134 <u>may</u> interface with the receiver 130, remote 148" ('328 Patent at 17:5-6), "the remote 148 and receiver 130 <u>may</u> be communication matched by the use of a code key" ('328 Patent at 17:26-28), and "if the communication between the remote 148 and receiver 130 is wireless, the receiver learn facility 152 <u>may</u> be used to establish the communication between them" ('328 Patent at 18:9-12). This ubiquitous use of permissive language shows that while the controller is *capable of* communication with the remote, it need not communicate with the remote. *See Prolitec*, 807 F.3d at 1358-61 ("may" permissive and non-limiting); *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) (same).

Second, Tempur improperly translates "has responded to the position recall command," as the claim recites, into "has <u>successfully completed</u> the position recall command." The claim term "responded to" does not mean "successfully completed." As noted above, one may not rewrite the claim to add a limitation that is not required by the claim wording. *See Phoenix Licensing, L.L.C. v. Advance Am.*, No. 2:15-CV-1367, 2016 WL 6217180, at *26-30 (E.D. Tex. Oct. 25, 2016) (giving term "responsive communication" plain and ordinary meaning and refusing

to rewrite claim to read in defendants' proposed limitation to require particular type of response).

In any event, the specification, which Tempur apparently ignores, contradicts Tempur's construction. According to the specification, a "response" to a command does not necessarily indicate the command was successfully completed. For example, the specification discloses a safety feature such as a shut-off sensor wherein "if the actuator 104 connection with the safety bracket 122 slot reaches the first side of the slot, the actuator 104 retraction may be stopped … there may be an indication to the user that . . . the adjustable bed facility 102 sections (*sic*) downward motion has been stopped." '328 Patent at 15:6-23. In that case, the communication from the adjustable bed controller to the remote control would indicate the <u>lack of success</u> of the position recall command. Further, the specification later teaches that a communication from the adjustable bed facility to the remote control may contain feedback "that indicates that the command was successful, ***failed, is in progress, in conflict with a command in progress, failed for safety reasons, or the like.***" *Id*. at 39:42-57 (emphasis added). Tempur's construction limits the term to just one of the possibilities—success—while ignoring all of the other listed possibilities. That is improper. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1372 (Fed. Cir. 2005) (improper to limit construction to one embodiment, even preferred embodiment).

19

### D. "wood" ('366 Patent, Claims 1, 10, 13, 14, 25)

| REVERIE'S CONSTRUCTION | TEMPUR'S CONSTRUCTION |
|---|---|
| wood products, including wood cut from a log and engineered or composite wood | solid wood, oriented strand board, or plywood |

Claim 1 of the '366 Patent is directed to "[a]n adjustable mattress support facility" that comprises, among other components, "a wood base frame."  The other asserted claims either recite "a wood base frame" as well or, in the case of Claim 13, a variation on the theme, namely, "the frame, the head board, and the foot and back deck being formed of wood."

The parties agree that the term "wood" encompasses at least wood cut from a log (what Tempur presumably means by "solid wood") but disagree on the extent to which this term also encompasses other forms of wood, such as engineered or composite wood.  Tempur agrees that at least some engineered or composite wood materials may be used—namely, "oriented strand board or plywood."  While these two types of composite or engineered wood products are certainly included within the term "wood," they are not the only possible species of the genus "wood." Reverie's construction reflects the inclusive use of wood in the patent.

The specification provides several non-limiting examples of the types of material that constitute "wood" used in the base frame. For instance, the specification explains that "the base frame may be made from wood." '366 Patent

at 48:19-24, 48:38. The specification further explains that the adjustable bed frame may consist of "foundation materials, *such as* oriented strand board (OSB), plywood, *and the like*." '366 Patent at 48:58-61 (emphasis added).  As previously argued, use of the terms "such as" and "and the like" are meant to expand a list of examples, not restrict it.  *See Rowe Int'l*, 500 F. Supp. 2d at 905 (rejecting defendants' proposed construction because it "would render the words 'such as' and 'or the like' superfluous"); *Outside the Box Innovations*, 2006 WL 6142860, at *9 (rejecting a proposed construction that was "limited to only two materials, canvas or plastic [because the] specification explicitly refers to 'flexible material *such as* canvas, plastic *or the like*…'") (emphasis added).

Plywood and OSB are species of what is known as engineered or composite wood.  The U.S. Department of Agriculture's *Wood Handbook—Wood as an Engineering Material*, groups plywood and OSB with other types of composite wood.  *See* Ex. J, Ch. 11-1.  The *Wood Handbook* explains that this category includes a wide range of wood materials bonded together:

> *The term composite is being used in this chapter to describe any wood material adhesively bonded together*. Wood-based composites encompass a range of products, from fiberboard to laminated beams. Wood-based composites are used for a number of nonstructural and structural applications in product lines ranging from panels for interior covering purposes to panels for exterior uses and *in furniture* and support structures in buildings.

Exh. J, Ch. 11-1 (emphasis added).

21

The *Wood Handbook* goes on to explain different uses of composite wood, stating, for example, that medium density fiberboard "is frequently used in place of solid wood, plywood, and particleboard in many furniture applications." *Id.* at 11-13.  Accordingly, given that OSB and strand board are merely examples of the broader category of engineered or composite wood materials, use of "and the like" indicates that any similar material (that is, other composite or engineered woods, such as particleboard) may also be used.

In this regard, "wood" is essentially a genus. The species are the various formats of wood suitable for furniture, ***such as*** OSB, plywood, ***and the like***.  As a matter of law, "[c]laims properly directed to a genus may be adequately supported by the patent disclosure if a sufficient number of species is disclosed so as to properly identify the scope of the genus."  *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287-88 (Fed. Cir. 2010) (holding that where several exemplary species were described in the specification, the claim language supported a claim to the broader genus). Where, as here, the specification identifies two species of engineered and composite wood—plywood and oriented strand board—and indicates through the "and the like" language that the category is broader than the specifically identified examples, one of skill in the art would understand that the broader genus, and not just the specific "species" examples, are covered by the claims.

22

ME1 24923753v.2

The purpose of allowing a range of wood materials to be used in the base frame is explained in the specification.  The specification explains that such a range is necessary to meet the different goals of being sturdy, supportive, or inexpensive. '366 Patent at 10:57-58 ("The support structure may be a frame structure to provide support yet remain lightweight."); *see also* 12:40-43 ("A person knowledgeable in the art may understand that the frame structure may have many different construction configurations to provide support and rigidity to the mattress 110 and springs 108."); 58:49-56 ("As a non-limiting example, a wood mattress platform may be cheap, while a plastic mattress platform may be lighter for shipping purposes").

Further, the specification points out that "[c]ombinations of materials may be used when desirable." '366 Patent at 57:6-7.  In other words, various grades or categories of wood could be combined.  The patent explains why this option is desirable:

> Manufacturers as well as those skilled in the art may recognize that various combinations of materials can serve as distinguishing factors when constructing different product lines.  Assemblies made from higher quality materials or with mechanically sturdier construction (i.e., with more supporting frame connectors) may be priced higher than others.

*Id*. at 57:10-17.  In other words, based on these teachings, "wood" includes wood cut from a log, and engineered and composite wood, to give the manufacturer the option of providing different levels of quality.  A frame could be made from solid

23

oak or maple and sold at a premium price or it could be made from particleboard, plywood, or cheaper product and sold at a lower price.

Accordingly, Reverie's proposed construction accurately accounts for the fact that oriented strand board and plywood are merely provided as exemplar "species" of categories of wood that can be used in practicing the claims. In contrast, Tempur ignores the terms "such as" and "and the like" and thus fails to read the specification as a whole. Indeed, Tempur falls for one of the cardinal sins of claim construction: reading specific examples from the specification into the claim as limitations. That is improper. *See Teleflex*, 299 F.3d at 1328.

## CONCLUSION

For the foregoing reasons, Reverie respectfully requests that the Court adopt its proposed claim constructions.

ASCION, LLC d/b/a REVERIE
By its attorneys,

*/s/ Erik P. Belt*
Erik Paul Belt (Mass. BBO #558620)
ebelt@mccarter.com
Brian J. Larivee (Mass. BBO #673978)
blarivee@mccarter.com
**MCCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, MA  02110-3113
617.449.6500

David Honigman (P33146)
dhonigman@manteselaw.com
Krista Hosmer (P68939)
khosmer@manteselaw.com
MANTESE HONIGMAN, P.C.
1361 E. Big Beaver Road
Troy, MI  48083
248.457.9200

Dated:  June 2, 2017

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the forgoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ *Brian J. Larivee*
Brian J. Larivee

ME1 24923753v.2