UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:17-CV-00403-JMH-EBA

ASCION, LLC,
*doing business as*
Reverie,                                                                    PLAINTIFF,


V.                              **REPORT AND RECOMMENDATION**


TEMPUR SEALY
INTERNATIONAL, INC., *et al.*,                                       DEFENDANTS.


\*\*\* \*\*\* \*\*\* \*\*\*

This action originated in the Eastern District of Michigan nearly seven years ago on allegations by the Plaintiff, Ascion, LLC d/b/a Reverie (hereinafter, "Reverie"), that Defendants, Tempur Sealy International, Inc. and Tempur-Pedic Management, LLC (collectively, "Tempur"), infringed several patents and breached a confidentiality agreement concerning various product designs. [R. 1]. The history of this litigation includes extensive motion practice by both parties, a transfer of venue, and perplexing episodes of inactivity, all resulting in several false-starts that have significantly delayed progress by both parties in this action.

The present issue, however, is whether Reverie's conduct—in this Court and in the Eastern District of Michigan—merits case-ending sanctions, and dismissal of the action in accordance with Fed. R. Civ. P. 41(b). The District Judge referred this matter to the undersigned to prepare proposed findings of fact and conclusions of law regarding whether this action should be dismissed. [R. 162]. In the same Order, the District Judge directed Reverie to show cause why its case should not be dismissed with prejudice. Reverie responded to the Court's Show Cause Order. [R. 165]. Tempur responded to Reverie. [R. 175]. With leave from the Court, Reverie replied.

[R. 177, 178].  Accordingly, this matter stands fully briefed and ripe for review.

## I.

The Plaintiff, Reverie, is in the business of researching, developing, and patenting bedding technology, particularly adjustable bed technology.  [R. 1 at pg. 1].  The Defendants, Tempur, are also in the bedding industry.  Reverie and Tempur maintained a business relationship from 2006 through about 2013, wherein Reverie agreed to supply certain components to Tempur for the development of adjustable bed foundations.  [*Id.* at pg. 10].

Reverie filed its Complaint in June 2015 in the Eastern District of Michigan, alleging seven claims of patent infringement and a claim that Tempur breached a confidentiality agreement pertaining to product designs Reverie shared with Tempur.  [R. 1].  A clerical error by the court resulted in the first Scheduling Order, [R. 29], being issued six months after the parties' Rule 26(f) conference, which invalidated certain deadlines and required the issuance of a new scheduling order.  The court entered an Amended Scheduling Order on October 26, 2016.  [R. 35].  At this early stage, the court opined that the parties engaged in very little discovery following the Rule 26(f) conference, even in the absence of an operative scheduling order.  [*Id.* at pg. 1].[1]  Under the Amended Scheduling Order, the deadline for completion of fact discovery was September 1, 2017.

The parties began engaging in extensive motion practice almost immediately following the court's entry of the Amended Scheduling Order: Tempur moved to strike Reverie's preliminary infringement disclosures, [R. 36], and moved for an emergency stay of certain deadlines pending resolution of its motion to strike, [R. 37]; Reverie moved to exclude Tempur's "technology

---

[1] When issuing the Amended Scheduling Order, the District Judge specifically considered the party's lack of discovery up to that point, noting that:

> Based on the original Scheduling Order and in the interests of justice, including judicial economy and need for the parties to engage in diligent discovery and motion practices to move this case forward, the Court enters the Amended Scheduling Order set forth below. Most of the amended dates are approximately 7-8 months later than those set forth in the original Scheduling Order, though **a few dates have been accelerated to propel the parties to commence discovery**.

[R. 35 at pg. 2] (emphasis added).

tutorial," [R. 55]; Reverie moved to adjust the case management schedule, [R. 67]; Reverie filed an emergency motion to stay the deadline for final election of asserted claims, pending the court's decision on its motion to adjust, [R. 68]; Tempur moved to transfer venue to the Eastern District of Kentucky, [R. 69]; Tempur filed an emergency motion to compel final election of claims, [R. 78]; and Reverie moved to stay expert discovery, [R. 79].  By the time the court granted Tempur's motion to transfer venue on October 13, 2017, the fact discovery deadline had long passed.  [R. 88].

After this action was transferred to the Eastern District of Kentucky, the Court held a *Markman* hearing on December 11, 2017  to ascertain the meaning of the patents in controversy.[2]  Then, the docket for this action remained largely inactive for almost two years.  On October 4, 2019, Reverie moved for leave to supplement the Complaint.  [R. 129].  After Reverie's motion for leave to supplement became fully briefed, the action again fell dormant for over a year.  On July 28, 2021, the Court entered an Order on claim construction and, subsequently, scheduled a combined motion hearing on Reverie's motion for leave to supplement, and a Rule 16 scheduling conference.  [R. 136, 137].

During the hearing, counsel for Reverie represented to the Court that "some discovery" had been done, but there remained "a lot more" to do.  [R. 170 at pg. 7].  Counsel for Tempur, on the other hand, stated that Reverie had done virtually no fact discovery, such as asking for witness availably, tendering a Rule 30(b)(6) list of topics, or taking depositions of fact witnesses.  [*Id.* at pg. 16].  Reverie countered that they had exchanged written discovery, and that parties had made document requests.  [*Id.* at pg. 24–25].  Counsel for Reverie further explained that delay in

---

[2] A hearing pursuant to *Markman v. Westview Instruments, Inc.* is designed to formally construct the patent claims and is also called a claim construction hearing.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) ("When a court construes the claims of the patent . . . the court is defining the federal legal rights created by the patent document."), *aff'd*, 517 U.S. 370 (1996).

discovery was caused by the extensive motion practice, including some motions by Tempur which added to Reverie's burden. [*Id.* at pg. 25]. When asked by the Court why Reverie had not moved to stay proceedings in light of such barriers, Reverie directed the Court to its motion to amend the case management schedule, [R. 67], which was never ruled on by the presiding judge in the Eastern District of Michigan because, presumably, it was almost immediately followed by Tempur's motion to transfer venue. [*Id.* at pg. 23].[3]

The District Judge denied Reverie's motion for leave to supplement the Complaint and entered a Final Revised Scheduling Order. [R. 144 & 147]. The order established a new fact discovery deadline of March 31, 2022. The order further advised the parties that motions for extension of time would be referred to the District Judge and such motions would not be favored. [*Id.* at pg. 6]. Discovery disputes, on the other hand, were referred to the undersigned. [*Id.*]. On March 29, 2022, counsel for Reverie requested a telephone conference with the undersigned regarding an amendment to the scheduling order. The undersigned entered an order scheduling the telephone conference, and subsequently cancelled it, directing the parties to seek a modification of the fact discovery deadline with the District Judge in accordance with the Final Revised Scheduling Order. [R. 156, 157].

As directed, Reverie filed its motion for an extension of time to complete fact discovery on April 5, 2022. [R. 158]. In support of its motion, Reverie stated that a health emergency among its legal team compromised its ability to complete discovery. [*Id.* at pg. 2]. Reverie also averred that both parties had noticed depositions that could not be scheduled or completed prior to the March 31, 2022 fact discovery deadline, despite their diligence in pursuit of discovery. [*Id.* at pg.

---

[3] The Court also notes that Reverie contemporaneously filed an emergency motion to stay a deadline for the final election of asserted claims, pending the Court's ruling on its motion to alter the case management schedule. [R. 68]. It appears that this motion has not been ruled upon, and was not mooted by the Court's issuance of its Final Revised Scheduling Order, and thus remains pending at this time.

2–3].  Accordingly, Reverie requested 30 extra days to complete fact discovery.  Tempur responded, partially opposing Reverie's motion for an extension of time, and moving for sanctions pursuant to Fed. R. Civ. P. 37 & 41.  [R. 161].  Tempur stated that, due to Reverie's discovery misconduct, it was unable to depose Reverie's witnesses prior to the March 31 fact discovery deadline.  [*Id.* at pg. 5–6].  Further, Tempur asserted that sanctions are appropriate because Reverie's motion for an extension of time was a dilatory tactic consistent with Reverie's pattern of ignoring discovery deadlines set by this Court and the United States District Court for the Eastern District of Michigan.  [*Id.* at pg. 3].  Tempur specifically asked the Court to exercise its discretion to dismiss this matter pursuant to Federal Rules of Civil Procedure 37 and 41 due to Reverie's alleged discovery misconduct and alleged failure to prosecute its case over seven years.  [*Id.* at pg. 8].  In light of the allegations raised by Tempur, the District Judge ordered Reverie to Show Cause as to why its claims should not be dismissed without prejudice.  [R. 162].

Prior to Reverie filing its Response, Tempur made two additional supplemental filings: first, a supplement to the record of newly learned facts for purposes of assessing sanctions, [R. 163]; and second, a motion to supplement the record with newly learned facts for the purposes of assessing sanctions.  [R. 164].  Both filings allege that, in addition to discovery misconduct and failure to prosecute, Reverie misrepresented facts to the Court when filing its motion for an extension of time.

On April 29, 2022, Reverie responded to the Court's Show Cause Order and addressed the allegations raised by Tempur that Reverie misrepresented facts to the Court.  [R. 165].  Tempur responded.  [R. 175].  Tempur sought leave from the Court to file a Reply, which the District Judge granted.  [R. 176, 177, & 178].  Thus, the issue of whether Reverie's conduct merits the dismissal of this action is fully briefed and ripe for review.

## II.

Federal Rule of Civil Procedure Rule 41(b) confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (citing *Knoll v. AT&T*, 176 F.3d 359, 362–63 (6th Cir. 1999). Nonetheless, "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Tung-Hsiung Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (internal quotation marks omitted). The Sixth Circuit defines contumacious conduct as "perverse in resisting authority" and "stubbornly disobedient." *Schafer*, 529 F.3d at 737.

The Rule, in part, allows the district court to manage its docket and avoid unnecessary burdens on the courts and opposing parties. *Knoll*, 176 F.3d at 363. Still, the courts must balance "the public's interest in expeditious resolution of litigation," "the risk of prejudice to a defendant" when a plaintiff fails to actively pursue its claims, and the general policy that "favors disposition of cases on their merits." *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993). Accordingly, in addition to requiring a showing of contumacious conduct by the plaintiff, the Court considers four factors when assessing involuntary dismissal under Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the dismissed party's conduct;
> (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
> (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Carpenter*, 723 F.3d at 704 (citing *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)). "[N]o one factor in this analysis is outcome determinative." *Marietta Health Care Physicians, Inc., v. Yoak*, No. 2:19-cv-5626, 2021 U.S. Dist. LEXIS 68239, at *3 (S.D. Ohio Apr. 8, 2021) (citing *Schafer v. City of Defiance Police Dep't.*, 529 F.3d 731, 737 (6th Cir. 2008)). Moreover, because "the entry of a default judgment against a defendant or an order of

dismissal . . . are the court's strongest weapons," courts should not impose these sanctions lightly. *UPS v. DNJ Logistic Grp., Inc.*, No. 3:16-CV-00609-GNS-RSE, 2019 U.S. Dist. LEXIS 195629, at *3–4 (W.D. Ky. June 6, 2019) (citing *Brown v. Sneed*, No. 09-392-GFVT, 2011 U.S. Dist. LEXIS 90901, at *4 (E.D. Ky. Aug. 15, 2011).

### III.

This matter has been extensively briefed, both in the context of Tempur's Motion for Sanctions, [R. 161], and the District Judge's Order to Show Cause, [R. 162, 163, 164, 165, 175, 178].  Thus, the undersigned shall proceed by evaluating whether Reverie's conduct throughout the litigation of this matter merits dismissal pursuant to Fed. R. Civ. P. 41(b), or if lesser sanctions would be more appropriate.

### A. Failure To Cooperate in Discovery or Prosecute Case Due to Willfulness, Bad Faith, or Fault

Reverie initiated this action nearly seven years ago.  Tempur contends that, since the inception of this matter, Reverie has ignored court-ordered discovery deadlines and employed dilatory discovery tactics, all of which have prevented the swift litigation and resolution of this action.  [R. 161 at pg. 18, 20, 24–25].  Reverie, in turn, argues that its conduct has not resulted in intentional delay and, further, Tempur's own "gamesmanship" and delay have drawn out this lawsuit by adding to Reverie's burden.  [R. 165 at pg. 5–6, 8, 23].

A litigant need not take "positive steps to delay the trial or prevent it from being reached by operation of the regular machinery of the Court" to be dilatory under Fed. R. Civ. P. 41(b). *Sexton v. Uniroyal Chem. Co.*, 62 F. App'x 615, 618 (6th Cir. 2003) (quoting *Bendix Aviation Corp. v. Glass*, 32 F.R.D. 375 (E.D. Pa. 1961), *aff'd*, 314 F.2d 944, *cert. denied* 375 U.S. 817 (1962)).  Thus, the Court will assess whether Reverie's conduct "display[ed] either an intent to

thwart judicial proceedings or a reckless disregard for the effect of [its] conduct on those proceedings." *Carpenter*, 723 F.3d at 705.

### 1. Failure to Comply with Court-Ordered Discovery Deadlines

First, Tempur argues that Reverie willfully, or "[a]t the very least, . . . with reckless disregard," flouted the court-ordered discovery deadlines and directives in this Court and in the Eastern District of Michigan. [R. 161 at pg. 20–21]. For example, Tempur directs the Court to Reverie's initial election of claims. On November 17, 2016, Reverie served its Preliminary Initial Disclosures, asserting 84 initial patent claims. [R. 36 at pg. 8]. Tempur moved to strike, [R. 36], arguing that Reverie contravened the presiding judge's directive that Reverie make no more than thirty-one total initial patent claims, or up to five claims per patent. [R. 161 at pg. 10]. Reverie argued that the Amended Scheduling Order, [R. 35], was ambiguous regarding whether the thirty-one claim limitation applied to preliminary infringement contentions. However, the Court granted Tempur's motion to strike and found "there was no dispute that Plaintiff would be limited at the Preliminary Infringement Disclosure stage to five patent claims for each of the seven asserted patents." [R. 43 at pg. 4]. Thus, the court ordered that Reverie's 84 claims comprising its Preliminary Infringement Disclosure be "disregarded as void and having no effect." [*Id.*]. The court's thorough analysis of the plain language of the Amended Scheduling Order demonstrates that there was no ambiguity regarding the limitations placed upon Reverie regarding the number of claims it was allowed to assert in its Preliminary Infringement Disclosures. [R. 43]. Thus, the record demonstrates that Reverie willfully asserted of 84 claims in violation of the presiding judge's discovery order.

Next, Tempur directs the Court to Reverie's filing of two emergency motions to stay court-ordered deadlines as additional violations of the court's discovery orders. [R. 161 at pg. 7]. For instance, Reverie filed a motion to stay the deadline for the exchange of claim construction

(*Markman*) briefs pending the resolution of its motion to compel.  [R. 48].  Tempur also cites to a second instance wherein Reverie filed an emergency motion to stay the deadline to make its final election of asserted claims, which was August 7, 2017.  [R. 161 at pg. 11].

Generally, filing a motion for extension of time or otherwise altering the case management schedule does not toll the time for compliance with court-ordered deadlines.  *See e.g.*, *McCone v. Exela Techs.*, No. 6:21-cv-912-CEM-DCI, 2021 U.S. Dist. LEXIS 255115, at *3 (M.D. Fla. Sep. 27, 2021); *Laughlin v. Stuart*, No. 19-cv-2547 (ECT/TNL), 2021 U.S. Dist. LEXIS 34365, at *11 (D. Minn. Feb. 23, 2021).  Reverie's emergency motion to stay the claim construction brief deadline would not have tolled its compliance.  However, Reverie ultimately timely filed its claim construction brief, [R. 50], and subsequently withdrew its emergency motion to stay the filing deadline, [R. 52].  Thus, Reverie did not violate a court-ordered discovery deadline with respect to filing the claim construction brief.

As for Reverie's final election of asserted claims the Court finds that, although Reverie was non-compliant with the Court's Amended Scheduling Order, Reverie was not motivated by bad faith, willingness, or fault.  At the outset of this action, the presiding judge clearly envisioned that the final election of claims would occur "after 'issuance of the Court's claim construction order,'" which is consistent with the court ordering a briefing schedule and hearing on claim construction to conclude *prior* to the final election of asserted claims deadline.  [R. 35 at pg. 4–6].  Reverie filed its emergency motion to stay the deadline on August 4, 2017, four days before the deadline and two weeks before Tempur filed its motion to transfer venue.  [R. 68, 69].  By the time the case was transferred, the remaining deadlines established by the court in the Eastern District of Michigan were invalid.  The claim construction hearing did not occur until December 11, 2017, [R. 121], and the Court did not issue its opinion on claim construction until July 28, 2021, [R. 136].  Several months later, the Court issued its Final Revised Scheduling Order.  [R. 147].  Although

the parties' joint status report notified the Court that Reverie's motion to stay the final election of claims deadline was pending, the new scheduling order did not provide a new deadline.  Later, Reverie made its final election of asserted claims on April 20, 2022.  [R. 165 at pg. 7 n.2].  Reverie contends that  it "pared its infringement contentions to 31 claims back in 2017," and that it opted to further pare down those claims again in April 2022 even though it was not required to do so. [*Id.*].

Simply put, compelling the parties to comply with the original deadline for final election of claims—August 7, 2017— would frustrate ordinary procedure in complex patent matters such as this action.  *See* 1 Ethan Horwitz and Lester Horwitz, *Horwitz on Patent Litigation* § 5.02 (Matthew Bender) ("In the preliminary elections, the [Federal Advisory Circuit's] Model Order suggests the plaintiff may assert no more than 32 total claims . . . .  After the *Markman* hearing, the patent owner must serve a Final Election of Asserted Claims[.]").  Considering that Reverie timely moved to stay the deadline for a final election of claims nearly four years ago, and that the Court did not set a new final election of claims deadline, the undersigned finds that Reverie's technical violation of a court-ordered discovery deadline does not constitute the dilatory or contumacious conduct envisioned by Rule 41(b).  *Cf. Donnelly Corp. v. Gentex Corp.*, Case No. 1:93-CV-530, 1996 U.S. Dist. LEXIS 7976 (W.D. Mich. Feb. 9, 1996) (defendant's technical violation of the case management order did not warrant an impositions of sanctions under Fed. R. Civ. P. 16).  In any event, both parties agree that Reverie has made its final elections, thus mooting Reverie's pending emergency motion, [R. 68].

Finally, Tempur claims that that Reverie failed to comply with this Court's scheduling order when it moved for an extension of the fact discovery deadline on April 4, 2022.  [R. 161 at pg. 22].  Under the Federal Rules "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  A showing of good cause requires the movant to show

that the original deadline "cannot be reasonably met despite [their] diligence."  Fed. R. Civ. P. 16, Advisory Note to the 1983 Amendment.  In assessing good cause, the Court also considers the prejudice to the nonmoving party.  When Reverie moved for its extension of time, its showing of good cause was premised on its claims that an associate attorney took ill during the last week of discovery.  Tempur argues that the illness of Reverie's counsel does not explain "why it did not meaningfully participate in discovery prior to that date, why it failed to make any witnesses available for deposition . . . , or why other [counsel] could not fill in" for the Reverie attorney who was ill.  [R. 161 at pg. 22–23].

Clearly, Reverie maintains the responsibility to participate in discovery in a meaningful manner, even when counsel falls ill.  However, Reverie is not in violation of the Final Revised Scheduling Order with respect to requesting an extension, as the Court granted both parties a limited extension to conduct fact discovery.  [R. 162].  It does not follow that Reverie can be sanctioned for that conduct that was explicitly permitted, albeit with limitations, by the Court.

## 2. Failure to Prosecute

Second, Tempur avers that Reverie has willfully failed to meaningfully participate in fact discovery, thus resulting in Reverie failing to prosecute its case.  [R. 161 at pg. 19–23].  Much briefing has been devoted to a back-and-forth between the parties about the volume, timeliness, and completeness of parties' requests for production of documents.  Tempur also contends that Reverie also failed to prosecute its case by failing to supplement it's Rule 26 disclosures or present witnesses for deposition.

Based on the information presented by the parties in the briefing, it appears that both parties made progress with regard to written discovery prior to the case being transferred to this Court.  Reverie states that it served and responded to interrogatories, requests for production, and requests for admission.  [R. 165 at pg. 4].  Further, Reverie claims that it produced about 50,000 documents

in 2017, but Tempur refused to accept them. [R. 165 at pg. 15]. Reverie states that additional discovery, such as the taking of depositions, was made more difficult when Tempur served its invalidity contentions and "virtually limitless number of prior art obviousness combinations" on March 6, 2017. The Court also notes extensive motion practice occurring between this date and the close of fact discovery, in addition to the parties briefing claim construction.

When this action was transferred to this Court and a new scheduling order was issued, both parties continued to produce a voluminous amount of documents. Although "grossly inadequate" according to Tempur, Reverie served 59 documents in late 2021. [R. 161 at pg. 11]. Upon Tempur notifying Reverie that it was not satisfied with the production, Reverie re-produced the documents it served in 2017, which Tempur previously declined to accept. [R. 165 at pg. 15]. Then, Tempur states that Reverie produced 33,355 documents on March 25, 2022, six days before the fact discovery deadline, and that additional "delinquent" documents poured in between March 29 and March 31, as well. [R. 161 at pg. 12]. Reverie's production of this number of documents mere days before the close of fact discovery can be described as nothing other than eleventh-hour document dump.

To justify its eleventh-hour production, Reverie explains that it "diligently searched for and produced" the documents requested by Tempur which Reverie had in its possession. [R. 165 at pg. 16]. Reverie insinuates that the late production consisted of documents it did not have in its possession, certified copies of USPTO documents, and subsequently undertook to order those documents. [*Id.*]. Tempur counters that Reverie's March 25, 2022 production "consisted of business documents and records (including more than 1,460 source code documents)," not certified USPTO documents. [R. 175 at pg. 24]. Reverie fails to counter Tempur's assertion in its Reply. Although the Court does not find a "clear record of contumacious conduct." *Carpenter*, 723 F.3d at 704 (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)), or that Reverie acted in

bad faith, Reverie was at least reckless in this instance where its late production caused further delay in this litigation.

Tempur also contends that Reverie's conduct evidences a failure to prosecute its case when, in the course of attempting to schedule depositions of Reverie employee witnesses, Reverie notified Tempur that those witnesses were no longer employed by Reverie. [R. 161 at pg. 26]. Reverie informed Tempur of this change on March 21, 2022, ten days before the close of fact discovery, and Tempur alleges that Reverie refused to disclose when it learned of the employment changes. [*Id.*]. Tempur further insinuates that Reverie's late notification was an attempt to delay or prevent the deposition of those witnesses. Reverie counters that it did not operate in bad faith, and that its duty to supplement the disclosures was satisfied when it informed Tempur of the changed employment status in writing. [R. 165 at pg. 18]. Reverie states, and the Court agrees, that when Reverie informed Tempur in writing that two witnesses were no longer employed by Tempur, Reverie was compliant with Rule 26(e), which states that a party has a duty to supplement its Rule 26 disclosure "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. 26(e)(1)(A). In sum, the Court does not perceive a violation of any discovery order with respect to Reverie's Rule 26(a) disclosures, nor does the record support finding that Reverie acted in bad faith as to its supplementation.

Lastly, Tempur argues that Reverie willfully failed to participate in discovery when it did not produce a witness to appear for its Rule 30(b)(6) deposition. Tempur noticed Reverie's deposition on March 14, 2022, for the deposition to occur on March 28, 2022. [R. 161 at pg. 27]. Two days after being noticed, Reverie informed Tempur that Martin Rawls-Meehan was the designated corporate representative, and he would not be available prior to the Court's fact discovery deadline due to a travel conflict. [*Id.*]. By email, Tempur attempted to ascertain the

nature of Mr. Rawls-Meehan's travel and whether he could appear by video for his deposition. [*Id.* at pg. 28]. Tempur claims that Reverie's refusal to substantively provide an explanation, and failure to provide any witness for the Rule 30(b)(6) deposition, was an intentional attempt to evade its deposition. [*Id.*]. Indeed, during his deposition, Tempur questioned Mr. Rawls-Meehan on this very issue. *See* [R. 175-3 at pg. 11]. Mr. Rawls-Meehan could not definitively state why he was unavailable for a deposition during the month of March. [*Id.* at pg. 11–21].

Reverie avers that it cannot be faulted for Tempur unilaterally noticing Mr. Rawls-Meehan's deposition two weeks before the close of fact discovery. [R. 165]. Tempur, on the other hand, cites to its attempts to find a date to take the deposition in the "last two weeks of March" throughout the email correspondence between counsel, beginning in February 2022. [R. 161-4 at pg. 2; R. 161-5 at pg. 2]. The record further evidences that, rather than ensure the availability of its Rule 30(b)(6) witness, Reverie instead suggested that the parties discuss extending the fact discovery deadline to accommodate the depositions. [R. 175-2 at pg. 2]. Although the record does not indicate that Reverie was attempting to evade the deposition in some sort of gamesmanship, the record does demonstrate that Reverie was at the very least reckless with respect to scheduling Mr. Rawls-Meehan's deposition in good faith, and then offered a tenuous excuse for his not being available for the March 28, 2022 date noticed by Tempur. Although Mr. Rawls-Meehan's deposition has since been taken, the Court is mindful that the Court had to order Reverie to "make all efforts to have all necessary witnesses available for deposition[.]" [R. 162 at pg. 1].

### 3. Misrepresentations by Reverie to Tempur and the Court

In separate filings, Tempur supplemented its Motion for Sanctions. [R. 163, 164]. Tempur alleges that Reverie withheld material facts and subsequently misrepresented facts to the Court when it requested an extension of the fact discovery deadline. [R. 163 at pg. 2]. Reverie's motion for extension of time, [R. 158], included representations that former Tempur employee, Jennifer

Tarplee, had been evading service and would not communicate with Reverie regarding the scheduling of her deposition. [R. 158 at pg. 3]. In relevant part, Reverie stated:

> Plaintiff Reverie has issued five third-party subpoenas . . . . The remaining third-party, however, eluded service for several weeks and was only served on or about April 1. Specifically, starting on March 10, Reverie had been repeatedly attempting to serve a subpoena on a former Tempur employee, Jennifer Tarplee. But Ms. Tarplee refused or avoided service and would not communicate with counsel. Reverie's process server attempted service on five different occasions but failed each time. . . . Reverie tried several methods to locate Ms. Tarplee, including paying for a "skip trace" report to find her residence. Ms. Tarplee was finally served in hand by the local sheriff on April 1.

[R. 158 at pg. 3]. Tempur alleges that these representations are inconsistent by Tarplee's account of Reverie's attempts to obtain service, which she testified to in her deposition. [R. 163].

Under Federal Rules of Civil Procedure 11, when an attorney presents a written pleading to the Court, "whether by signing, filing, submitting, or later advocating it," he certifies "that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," "it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). For example, knowingly misrepresenting facts in a motion or other document is indicative of bad faith. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 146 (2d Cir. 2012) (affirming district court's decision to sanction defendant for its "gross mischaracterization" of prior arbitration proceedings); *see also Sanford v. Russell*, No. 17-13062, 2021 U.S. Dist. LEXIS 60629, at *35–36 (E.D. Mich. Mar. 30, 2021) (sanctioning defendants after repeated misrepresentation of the factual record to bolster their motion for summary judgment).

According to Tempur, Tarplee testified that she had been previously subpoenaed by Reverie to appear for a deposition on March 18, 2022, she appeared on the date and at the location on the subpoena, but Reverie did not appear. [R. 163 at pg. 3]. Further, Tarplee testified that she contacted Reverie's counsel while still at the location, and Reverie told her that because Tarplee

had not confirmed her attendance, Reverie rescheduled the deposition and requested Tarplee appear on March 31, 2022. [*Id.* at pg. 4]. Tarplee refused, until she was served a new subpoena by Sheriff. Tempur argues that Reverie's omission of these facts both in correspondence with Tempur and its motion amounts to a material misrepresentation that should be considered with Tempur's Motion for Sanctions.

Reverie asserts that its representations to counsel and the Court were consistent with Tarplee's deposition testimony, and that it did not materially misrepresent any facts surrounding Tarplee's deposition. Reverie's response enumerated all the actions it took to serve Tarplee, including its five attempts to serve Tarplee between March 7, 2022 and March 10, 2022, noticing a deposition for March 18, 2022, to no avail. [R. 165 at pg. 21]. Upon receiving no confirmation of receipt of the subpoena by Tarplee, Reverie sent a letter by FedEx overnight delivery on March 16, 2022, notifying her that the deposition would be postponed and supplying a new subpoena dated March 31, 2022. [*Id.* at pg. 22]. FedEx attempted to deliver the letter multiple times, with no success. [*Id.*]. Reverie again hired a process server to try to deliver the letter and new subpoena. [*Id.*]. On March 18, Reverie claims it received its first communication from Tarplee, by e-mail, stating that she was at the deposition location and that she would not agree to be deposed at a later date. [*Id.*]. Reverie claims that it tried to reschedule the deposition by e-mail, and that Tarplee did not respond until April 1, 2022, still indicating her refusal to schedule the deposition. [*Id.*]. Finally, Reverie claims it was finally able to obtain Tarplee's consent to sit for a deposition on April 1, 2022, after she had been served the subpoena by the Sheriff. [*Id.*].

Reverie evidently made numerous attempts to serve Tarplee, and when it did not receive confirmation that service had been effectuated, timely attempted to notify Tarplee of the postponement. Tarplee's own deposition testimony evidences a pattern of evasion, a pattern that is consistent with the representations made to this Court. Indeed, the March 18 deposition is

germane to considering whether Reverie had made a good faith attempt to conduct the deposition prior to the fact discovery deadline. However, both Reverie's statements and Tarplee's testimony evidence that Reverie repeatedly tried to effectuate service throughout the month of March and prior to the fact discovery deadline. Thus, the Court does not find that Reverie materially misrepresented the facts surrounding Tarplee's evasion of service.

**B. Prejudice to the Adversary Caused by Failure to Cooperate in Discovery**

Tempur also argues that it was prejudiced by Reverie's dilatory tactics, and therefore sanctions are warranted, and this matter should be dismissed. "[A] defendant is prejudiced by the plaintiff's conduct where the defendant waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008)(citations and quotation marks omitted). Additionally, "[P]rejudice may be presumed from an unreasonable delay." *Richter v. Am. Aggregates Corp.*, 522 F. App'x 253, 259 (6th Cir. 2013).

Throughout its briefing, Tempur has largely couched its prejudice in the duration of this litigation. It is true that this matter has been through two United States District Courts over the course of nearly seven years. It is also true that both parties engaged in significant and extensive motion practice, including Tempur's own motion to transfer venue that effectively forced a reset in court-established deadlines. "[W]hile there's been some delay, [the Court is not sure] the delay is attributable to any particular party or prejudice for that matter." [R. 170 at pg. 27]. Thus, the Court is not persuaded by Tempur's generalized statements that it has been prejudiced by this matter's duration when both parties played a part in drawing out the litigation.

However, Tempur does cite to discrete instances of material prejudice which bear weight in this Court's assessment of whether this matter should be dismissed pursuant to Rule 41(b). For instance, the Court does perceive that Tempur was prejudiced when Reverie produced over 30,000

documents (over 250,000 pages) at the eleventh hour, six days prior to the close of fact discovery. [R. 161 at pg. 23–24]. This document dump prejudiced Tempur and its ability to adequately prepare for the then-scheduled deposition of Mr. Rawls-Meehan on topics to which some of the documents were directly responsive. [*Id.* at pg. 24]. Reverie alleges that there was no true prejudice, given that all the documents have been produced and depositions have been taken. [R. 165 at pg. 12]. Reverie even goes so far as to state that any alleged prejudice would have been cured if only Tempur had cooperated with seeking an extension of the fact discovery deadline. [*Id.*]. The notion that Tempur is responsible for preventing its own prejudice is perplexing, and the Court rejects Reverie's assertion that Tempur's prejudice has since been cured. The fact of the matter is that Tempur had to expend time and resources in its effort to obtain Reverie's compliance, including bringing its motion for sanctions.

**C. Warning Regarding Possibility of Dismissal**

The next factor when considering case-ending sanctions pursuant to Fed. R. Civ. P. 41(b) is whether Reverie was warned that its failure to adequately cooperate could lead to the dismissal of this action. Importantly, Sixth Circuit precedent generally requires that a plaintiff be adequately warned of the possibility of dismissal, especially when there is not a clear record of contumacious conduct or bad faith. *See Harmon v. CSX Transp.*, 110 F.3d 364, 369 (6th Cir. 1997). Upon review of the record, there is no explicit warning by either court that continued dilatory conduct would result in dismissal. Tempur avers that this Court's titling the most recent scheduling order "Final Revised Scheduling Order" constituted an "implicit but clear warning that Reverie had a final chance to comply[.]" [R. 161 at pg. 25]. The text of the Order, however, provides no such warning, implicit or explicit. Also, contrary to Tempur's assertion that this Court issued a warning during the September 21, 2021 hearing, the Court has not orally advised Reverie that continued delay

could result in the dismissal of its case. Thus, the Court finds that Reverie has received no prior warning that dismissal could result from its conduct thus far.

### D. Possibility of Less Drastic Sanctions

Reverie's delay throughout discovery is certainly sanctionable, but dismissal is not the appropriate sanction. "The sanction of dismissal is appropriate only if the attorney's dilatory actions amounted to failure to prosecute and no alternative sanction would protect the integrity of pre-trial procedures." *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). After the Court granted a brief extension for fact discovery, this action appears to be on a swift course toward trial and, therefore, resolution on the merits. Reverie's conduct, although dilatory and prejudicial to Tempur, has not been particularly contemptuous or disrespectful to the Court.

However, there must be consequences when a party, such as Reverie, flouts the directives of the Court and prejudices its adversary. The Court has already adopted several suggested lesser sanctions, including compelling Reverie to make its witnesses available for depositions and precluding Reverie from discovering any additional information. [R. 162]. Tempur further requests the following sanctions, in the event the Court does not choose to dismiss the action:

1. Reverie should be precluded from presenting any lost profits damages theory trial;
2. Reverie should be precluded from relying on any document produced on or after March 25, 2022;
3. Reverie should be precluded from inspecting any delinquent source code;
4. Count 8 of the Complaint (Breach of Confidentiality Agreement) should be dismissed;
5. The Court should impose a negative inference that each third party law firm that McCarter & English represents and has refused to make available for deposition or produce documents would have testified that inventor Mr. Rawls-Meehan knowingly withheld material prior art from the U.S. Patent and Trademark Office during the prosecution of the Asserted Patents; and
6. Tempur should be awarded its fees incurred in connection with its Motion for Sanctions and Reverie's discovery abuse.

[R. 161 at pg. 25]. Of these proposed sanctions, the undersigned recommends that Tempur be awarded fees incurred in connection with its Motion for Sanctions, [R. 162], including the subsequent supplemental filings, [R. 163, 164]. These lesser sanctions, although still serious, will balance the Court's interest in preserving the integrity of this action with its interest in cases being resolved on their merits.

**IV.**

The undersigned finds that sanctions pursuant to Fed. R. Civ. P. 41(b) are not appropriate at this time. Having fully examined the record, and the Court being otherwise sufficiently advised,

**IT IS RECOMMENDED** that,

1. Reverie's Emergency Motion to Stay Deadline for Final Election of Asserted Claims [R. 68] be **DENIED AS MOOT.**

2. Tempur's Motion to Supplement its Motion for Sanctions [R. 164] be **GRANTED**; and

3. Tempur's Motion for Sanctions [R. 161] be **GRANTED** And that Reverie be responsible for all costs associated with Tempur bringing its Motion for Sanctions, including Tempur's supplemental filings in support of their motion, [R. 163 & 164].

Signed July 13, 2022.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation

should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).



**Signed By:**

*Edward B. Atkins*

**United States Magistrate Judge**