# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| ASCION, LLC, d/b/a REVERIE, | CASE NO. 5:17-CV-403-KKC |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| TEMPUR SEALY INTERNATIONAL, INC., f/k/a TEMPUR-PEDIC, *et al.*, | |
| Defendants. | |

*** *** ***

This matter is before the Court on motions to exclude (DEs 319/320, 326, 328) filed by Plaintiff Ascion, LLC ("Reverie") and Defendants Tempur Sealy International, Inc. and Tempur-Pedic Management, LLC (collectively, "Tempur"). Also before the Court is a motion to strike (DE 367/368) filed by Tempur. Now that each motion has been fully briefed, these issues are ripe for review.

## I.    Background

Reverie alleges that Tempur infringed upon seven of its patents. These patents include: U.S. Patent Nos. 8,682,457 ("the 457 Patent"); 8,909,357 ("the 357 Patent"); 8,046,116 ("the 116 Patent"); 8,565,934 ("the 934 Patent"); 9,044,366 ("the 366 Patent"); 8,869,328 ("the 328 Patent"); and U.S. Design Patent No. D720,553 ("the D553 Patent"). Reverie alleges the infringement of 31 claims across these seven patents, which relate to adjustable bed frames, mattresses, and accessories. This action was originally filed in the United States District Court for the Eastern District of Michigan before being transferred to this Court on October 16, 2017.

The Court has already conducted a *Markman* hearing in this matter and issued its claim construction order. (DE 136.) Now, both parties have filed motions for summary

judgment and various motions to exclude expert testimony. Reverie also filed a motion to strike certain declarations for the purpose of the Court's ruling on summary judgment. After a telephonic conference, the parties agreed that it was appropriate for the Court to rule on the motions to exclude and motion to strike before turning to the motions for summary judgment. Accordingly, the Court will analyze each motion in turn.

## II.    Analysis

Under Federal Rule of Evidence 702, expert testimony will be admitted where the proponent satisfies four requirements: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702(a)-(d). "The party proffering the expert has the burden of proving by a preponderance of the evidence that the expert satisfies Rule 702." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

As to reliability, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony." Fed. R. Evid. 702, advisory committee notes to 2000 amendment. Rule 702 provides "general standards to assess reliability: whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702).

A court's inquiry must focus "solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. "The task for the district court in

2

deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30. Courts should confirm that "the factual underpinnings of the expert's opinion [are] sound," *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999), but generally "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

"Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998) (citation omitted). "Mere weaknesses in the factual basis of an expert witness's opinion . . . bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quotations and citation omitted); *United States v. Davis,* 103 F.3d 660, 674 (8th Cir. 1996) (noting defendant was "free to challenge the expert's conclusions and point out the weaknesses of the [expert's] analysis to the jury during cross-examination" but "[w]eight and credibility are the province of the jury.")

### A.    Tempur's Motion to Exclude the Expert Testimony of Dr. Glen Stevick

Tempur moves to exclude the testimony of Reverie's expert, Dr. Glen Stevick ("Dr. Stevick"), who will opine regarding the alleged infringement of the D553 Patent. This patent is the sole design patent at issue in this matter. Tempur argues the following: (1) that Dr. Stevick failed to follow the governing legal test for design patent infringement; and (2) that Dr. Stevick's opinions on the D553 Patent are conclusory. (DE 320 at 9, 12.)

**First,** Tempur argues that Dr. Stevick failed to follow the infringement analysis laid out in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008). This

"ordinary observer" test for design patent infringement requires the patentee to show that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). "[I]f in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it too be the other, the first one patented is infringed by the other. *Egyptian Goddess, Inc.*, 543 F.3d at 670 (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)).

The Federal Circuit has explained that "when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art[.]" *Id.* at 678. "[I]f the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." *Id.* That is because "[t]he accused infringer is the party with the motivation to point out close prior art, and in particular to call to the court's attention the prior art that an ordinary observer is most likely to regard as highlighting the differences between the claimed and accused design." *Id.* at 679.

Tempur argues that because Dr. Stevick admits that he did not compare the claimed and accused designs with the prior art, his opinion is unreliable and should be excluded. It further states that "[Dr. Stevick's] general consideration of unspecified beds in general falls short of the requirements of the ordinary observer test to consider the closest prior art and provides no assistance to the trier of fact." (DE 320 at 11.) In support of its argument, Tempur cites to a Middle District of Florida case in which the district court found that an expert's opinions on infringement and invalidity must be excluded because the expert applied the

"points of novelty" test instead of the ordinary observer test. *See Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No. 6:12-cv-33-Orl-28DAB, 2013 WL 12156465, at *12 (M.D. Fla. Jan. 4, 2013).

In response, Reverie first argues that because Tempur had not identified any prior art in support of its non-infringement position by the time Dr. Stevick issued his report, Dr. Stevick had no prior art to use as a comparison. (DE 339 at 2.) Reverie further argues that "there is no requirement that an expert must opine on both parts of the [ordinary observer] analysis." (*Id.*) The Court finds the latter argument persuasive.

Both cases that Tempur relies upon in making its argument involve instances where the expert applied the incorrect legal test. In *Pac. Coast Marine Windshields Ltd.*, the expert applied the points of novelty test rather than the ordinary observer test. 2013 WL 12156465, at *12. And in *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 918 (6th Cir. 2009), an expert failed to properly perform an antitrust test that the parties agreed was "an accepted means" of analysis given the underlying facts. Neither case is similar to the instant matter.

Here, Dr. Stevick recognized and correctly identified the ordinary observer test. He chose to opine only on the first step of the test—something Tempur argues makes his opinion unreliable and excludable. Yet the burden is on the patentee, not one expert, to ultimately show that the ordinary observer test is satisfied and that infringement occurred. Dr. Stevick did not apply the wrong legal test in his analysis; he chose to limit his analysis to the first step of the ordinary observer test. Tempur has not demonstrated why he cannot opine on one part of the governing legal test. The burden remains on Reverie to satisfy the ordinary observer test through additional evidence or expert testimony. The Court finds no reason to exclude Dr. Stevick for analyzing only part of the ordinary observer test.

**Second,** Tempur argues that Dr. Stevick's opinions on the alleged infringement of the D553 Patent is conclusory. It asserts that Dr. Stevick "provides only a very brief and conclusory opinion that the D553 Patent is infringed" and that his opinion "does not provide any substantive analysis explaining the basis for his opinions . . . ." (DE 320 at 12.) Thus, Tempur argues that his opinions are "unreliable, irrelevant, and unhelpful." (*Id.*)

The Court is unconvinced by this argument. Dr. Stevick explains that he "considered prior art adjustable base designs on the market at the time" the D553 Patent was filed and "the art alleged to be invalidating by TEMPUR." (DE 315-9 at 113.) He also based his opinions on his professional experience and familiarity with adjustable bed products. (*Id.*) In finding that the patented and accused products were "not plainly dissimilar[,]" Dr. Stevick properly described both product designs and referenced the claim construction order in this case. (*Id.* at 114-115.) He further explains the features of each design that indicate similarity. (*Id.*) The Court finds that any issues that Tempur has with Dr. Stevick's testimony go towards the weight of his testimony, not its admissibility.

Accordingly, the motion to exclude Dr. Stevick's expert testimony will be denied.

### B.    Reverie's Motion to Exclude the Expert Testimony of Dr. Benjamin Goldberg

Reverie moves to exclude the expert report of Dr. Benjamin Goldberg, which pertains to the invalidity of Reverie's patents. (DE 326-1 at 1.) Specifically, Reverie argues that Dr. Goldberg based his invalidity opinions on construction of terms that are contrary to the constructions that the Court laid out in its claim construction order. (DE 136.) Reverie assert that Tempur "attempted to broaden the construction of ['increment' and 'actuator position'] through . . . Dr. Goldberg's opinion regarding prior art that discloses so-called 'lookup tables.'" (*Id.* at 3.) It claims that Tempur did this because it must have realized that it would have

been challenging to find prior art that adhered to the narrow construction of those terms. (*Id.*)

Dr. Goldberg offers opinions related to the alleged invalidity of three patents in this case: the 116 Patent; the 934 Patent; and the 328 Patent (collectively, the "Actuator Patents"). The Actuator Patents relate to the wireless control of an adjustable bed and their asserted claims require either an "increment value" or an "actuator position." The Court has construed those terms to have the same meaning.

Dr. Goldberg opines that the four prior art references at issue "render the Table Limitations obvious because the prior art references teach a person of ordinary skill in the art how to meet the Table Limitations." (DE 347 at 2.) These "Table Limitations" refer to the claim limitations relating to the storing of angles of rotation in lookup tables. Reverie argues that Dr. Goldberg opines that these limitations are anticipated or "explicitly disclosed" by these references (DE 326-1 at 5), but Tempur claims that Reverie misinterprets Dr. Goldberg's opinions. Tempur argues that Dr. Goldberg does not give an anticipation opinion for these references[1] but opines that the references render the Table Limitations obvious.

Pursuant to 35 U.S.C. § 103, a patent is invalid if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art to which the claimed invention pertains." "[T]he 'obviousness' test of [§] 103 is not one which turns on whether an invention is equivalent to some element in the prior art." *Dann v. Johnston*, 425 U.S. 2019, 228 (1976). "[A] patent can be obvious in light of a single prior art reference if it would have been obvious

---

[1] An anticipation opinion requires showing that "each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987).

to modify that reference to arrive at the patented invention." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016).

Reverie, however, claims that Dr. Goldberg "has not opined on *either* anticipation or obviousness, but rather . . . opined regarding the disclosure of certain references." (DE 359 at 1.) The Court is not convinced by this argument. Dr. Goldberg's deposition testimony does not, as Reverie claims, "plug the holes in his opinion" but instead appropriately clarifies the points about Tempur's obviousness argument analyzed in his expert report. Dr. Goldberg's expert report consistently references a person of ordinary skill in the art in the context of the § 103 obviousness test, applying it to each prior art reference. (*See* DE 326-2 at ¶¶ 17, 19, 21, 23.) Further, Dr. Goldberg is consistent in stating that he believes each reference teach storing an angle in the lookup table, which is consistent with the claim construction order. (DE 326-4 at 35:6-11, 44:17-22, 49:11-14.)

The Court finds that Dr. Goldberg's expert opinions are not contrary to the claim construction order. Dr. Goldberg's report focuses on how the four prior art references show that the § 103 obviousness test for invalidity is satisfied, in that they render obvious the claim limitations relating to the storing of angles of rotation in lookup tables. His deposition testimony only serves to clarify those opinions, not contradict or supplant them. Accordingly, Reverie's motion to exclude the expert testimony of Dr. Goldberg will be denied.

### C.    Reverie's Motion to Exclude the Expert Testimony of Dr. Yadin David

Reverie moves to exclude the testimony of Dr. Yadin David, which pertains to the non-infringement of Reverie's patents. Reverie primarily challenges the reliability of tests designed and conducted by Dr. David, arguing that they "were neither scientifically reliable nor relevant to infringement of the claim elements at issue." (DE 328-1 at 1.) Reverie also argues that his expert report consists of "cursory, unsupported opinions, as well as opinions premised on improper construction of the claims [and] an incorrect understanding of the

8

proper legal framework that are outside the scope of his expertise." (*Id.*) The Court will analyze each of Reverie's arguments in turn.

### i.    Infringement Tests

As previously discussed, expert testimony must help the trier of fact understand the evidence or determine a fact in issue, be based on sufficient facts or data, and be the product of reliable principles and methods. Fed. R. Evid. 702. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008) Further, district courts should consider various factors when evaluating whether expert opinions are reliable, which include: (1) whether the testimony "relates to matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying"; (2) whether the expert "has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; and (3) whether the expert "has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702, advisory committee notes to 2000 amendment (citations and quotation marks omitted).

Dr. David's testing involved the control system patents—i.e., the 116, 328, 457, 934, and 357 Patents. Reverie argue that not only did Dr. David design these tests "to achieve a certain result," he also failed to sufficiently document his testing protocol or the results. (DE 328-1 at 4.) Reverie further claims that the only documentation supporting Dr. David's opinions exist in the expert report, but it "contains insufficient detail to understand the tests or the results[.]" (*Id.*) Reverie also notes that Dr. David made "no attempt to investigate alternative explanations for the results he manufactured." (*Id.* at 5.) Tempur, in response,

argues that all of Reverie's challenges towards the infringement testing goes to the weight of the testimony, not its admissibility.

Upon review of Dr. David's expert report, the Court will decline to exclude his opinions based on his testing of the accused products. The Court is not persuaded that Dr. David failed to properly document his testing; his expert report explains when he conducted his tests and how he conducted his tests. Indeed, Dr. David's tests did not "require recitation of complex experimental procedures and data analysis." (DE 348 at 14.) Contrary to Reverie's assertions, Dr. David is not simply claiming non-infringement by testing the accused products under "unusual conditions." *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (finding that tests where the expert actively prevented infringement did not prove infringement). These tests, instead, show how "operation is affected when one condition is changed . . . and why that matters to the question of infringement" and how Tempur's beds operate under normal conditions. (DE 348 at 14.) While Reverie raises concerns about the failure to account for alternative explanations and extrapolation, the Court finds that these questions are best addressed during cross-examination.

The Court also finds that Dr. David can appropriately rely on Dr. Goldberg's opinions and conclusions when it pertains to subjects within his scope of expertise. "[A]n expert may in some circumstances rely on other experts' testimony[.]" *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675 (6th Cir. 2010). "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). In addition to his testing of the accused products, Dr. David made opinions based on the opinions of Dr. Stevick and Dr. Goldberg. He is not failing to add any "technical analysis of his own." (DE 328-1 at 15.) Accordingly, Dr. David's reliance in part on other expert opinions was not improper.

**ii.    Application of Improper Claim Constructions**

Claim construction in patent cases is a legal question for the court, not for the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). "[I]t is improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine on claim construction." *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (citation and quotation marks omitted). "It is true that an expert witness contradicting a court's claim construction order may render the expert's opinion inadmissible." *Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*, No. 6:18-cv-70, 2022 U.S. Dist. LEXIS 48061, at *8 (W.D. Va. March 17, 2022) (citing *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, No. 14-cv-62369, 2016 U.S. Dist. LEXIS 185998, at *6-7 (S.D. Fla. May 3, 2016) (holding an expert report inadmissible for directly contradicting the court's claim construction)). "But courts regularly hold admissible expert reports that merely elaborate on or apply in good faith the [court's] claim [construction], especially where the expert applied the court's claim construction in good faith." *Id.* (citing *Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1378 (Fed. Cir. 2008) (finding no error when an expert's failure to use the district court's exact words regarding claim construction did not change the substance of his testimony or render it inapplicable)).

Here, Reverie argues that Dr. David's inappropriately applied his own claim constructions when discussing the 357, 366, and D553 Patents. (DE 328-1 at 17-19.) The Court will discuss each argument in turn.

**First,** Reverie argues that, by taking the position that the accused products do not infringe the 357 Patent because the beds did not necessarily "move to the same position at the same time[,]" Dr. David narrows the claim from the plain and ordinary meaning of the claim limitation "adapted to communicate information to each other related to synchronizing simultaneous motion." (*Id.* at 17.) It asserts Dr. David does not explain "why he understands

11

this requirement to be within the plain and ordinary meaning of the claim element to a person of skill in the art." (*Id.*)

In response, Tempur argues that Dr. David's opinions are based on how a person of ordinary skill in the art would understand the claim limitation at issue. (DE 348 at 22.) It not only asserts that Dr. David's opinions are an elaboration of the Court's claim construction, but also claims that the Court should resolve the dispute about the meaning of the term "communicate information to each other related to synchronizing simultaneous motion" via a supplemental claim construction. (*Id.*) It argues that supplemental claim construction is appropriate because neither party sought construction of this term previously, and neither party believed a dispute existed as to the meaning of the term.

The Court finds this argument persuasive. While it does not appear that Dr. David made his opinions in bad faith, it would appear that there is a genuine dispute about the meaning of the term "communicate information to each other related to synchronizing simultaneous motion". Accordingly, the Court will decline to exclude these opinions at this point in time and recommend that Tempur moves separately for supplemental claim construction on any claims it believes are in genuine dispute.[2]

**Second,** Reverie argues that "essentially mak[es] an untimely disclaimer argument to argue non-infringement of the limitation 'positioned directly below an underside of the head board[]'" in regard to the 366 Patent. (DE 328-1 at 17.) It asserts that Dr. David opines that this limitation requires that no part of the element that is "directly below an underside" of the portion of a bed extend past that portion. (*Id.*) In other words, Reverie asserts that it

---

[2] District courts have considerable latitude in determining when to resolve issues of claim construction. *See Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

is Dr. David's opinion that the claim limitation "positioned directly below" cannot be met if any part of the structure also extends "outside the edge" of the desk. (*Id.* at 18.) It claims that this opinion improperly narrows the plain meaning of the limitation. (*Id.*)

Tempur points out that neither party requested construction of the term "a metal skeleton frame having a head board section positioned directly below an underside of the headboard[.]" (DE 348 at 23.) As a result, it argues that Dr. David only explains how a person of ordinary skill in the art would understand the plain and ordinary meaning of the term "positioned directly below an underside". (*Id.*) It asserts that Dr. David is not engaging in improper claim construction, but rather concluding that a person of ordinary skill in the art would recognize that a component that extends beyond a headboard is not positioned directly below a headboard. (*Id.*)

The Court is unconvinced of Reverie's argument. Dr. David is not engaging in claim construction, but is rather opining on what a person of ordinary skill in the art would understand the unconstrued term of "positioned directly below an underside" to mean. *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. Feb. 11, 2016) (citing *Avid Tech., Inc. v. Harmonic, Inc.*, 2014 U.S. Dist. LEXIS 174030, at *4 (D. Del. Dec. 17, 2014); *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, 2015 U.S. Dist. LEXIS 21514, at *15 (N.D. Cal. Feb. 20, 2015)) ("When a court does not construe a term or orders that ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury."). Accordingly, Dr. David did not engage in improper claim construction and the Court will not exclude his infringement testimony on the 366 Patent.

**Third,** Reverie argues that Dr. David improperly places limitations on the D553 Patent by asserting that infringement requires that ███████████████████████ ███████████████ (DE 328-1 at 19 (quoting DE 329 at ¶ 212).) It claims that Dr. David

13

took this language from *dicta* in the Court's claim construction order that was not part of the Court's actual construction. (*Id.*) It argues that Dr. David repeats this mistake by referencing the prosecution history and claiming non-infringement because the accused product does not contain an ███████████████████████████████████████████ ███████████████████████████ (*Id.*) Further, it asserts that Dr. David's analysis of the non-infringement of the D553 Patent is unreliable because it relied on observation and measurement of the bed in the wrong position—measuring it in a flat position rather than the raised position that is the subject of the actual patent design. (*Id.*)

Tempur first claims that Dr. David's reference to and consideration of the D553 Patent's prosecution history is directly relevant to "whether there can be infringement based upon prosecution history estoppel, which is not a claim construction issue but rather one of infringement." (DE 348 at 25; *see also Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154, 1158 (Fed. Cir. 2019) ("Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution.").)

It further argues that Dr. David did not place additional limitations into the Court's construction of the D553 Patent. It points out that Dr. David did, in fact, make observations about the claimed product in a raised position as well as flat. (DE 329 at ¶¶ 211-13.) It asserts that Dr. David did not place limitations on the claim construction, but rather used ███████ ███████████████████████████████████████████████████ (DE 329-1 at 30:11-14.)

The Court is satisfied that Dr. David did not engage in the improper claim construction of D553 Patent. Dr. David was permitted to consider the design patent's prosecution history in the context of a prosecution history estoppel argument, as Tempur asserts he did. It is also apparent that Dr. David did not limit his analysis of the claimed product when it was in a flat position. Further, Dr. David did not place limitations on the

claim construction by considering the patentee's own acknowledgments as noted in the Court's claim construction order when making his infringement analysis. (*See* DE 136 at 41 ("To be sure, while the D553 Patent does not have a 'dramatic' overhang, the patentee did acknowledge that the 'top portion overhangs slightly at the head of the bed, but does not overhang at the foo[t] of the bed, giving the bed a generally unified appearance.'").) Accordingly, Dr. David did not engage in improper claim construction and the Court will not exclude his infringement testimony on the D553 Patent.

### iii. Application of Incorrect Legal Frameworks

Reverie argues that Dr. David applied incorrect legal frameworks when he opined on: (1) the non-infringement of the D553 Patent; and (2) non-infringing alternatives to the accused products. (DE 328-1 at 19-23.) The Court will analyze each argument in turn.

**First,** Reverie argues that Dr. David's non-infringement analysis of the D553 Patent should be excluded because "his opinion is given from the point of view of either an expert in the field or a person of ordinary skill in the art[,]" when infringement of a design patent "is properly analyzed from the point of view of an ordinary observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Reverie claims that Dr. David's opinion fails to address what an ordinary observer would understand when comparing the accused product to the claimed design, ignoring the *Egyptian Goddess* test.

The record does not support Reverie's argument. As Tempur notes in its response, Dr. David's analysis followed the *Egyptian Goddess* test and even referenced Reverie's expert's own recitation of the proper legal framework. (DE 329 at 80.) Dr. David clarified in his deposition that his opinions on the non-infringement of the D553 Patent were made according to what an ordinary observer would perceive. (DE 329-1 at 25:21-23, 26:24-27:3.) Further, Dr. David incorporates his invalidity report in his non-infringement report, which expressly

15

states that the ordinary observer test is used when analyzing the infringement of design patents. (DE 348-6 at ¶ 717.)

Reverie also argues that Dr. David erred when opining what constitutes the proper article of manufacture for the purpose of damages for the D553 Patent. It claims that Dr. David "improperly limits the article of manufacture to just a portion of the final product[.]" (DE 328-1 at 21.) It further states that "[w]hile it is true that the relevant article of manufacture for the purpose of determining damages for the infringement of a design patent *can* be a component for the final product as sold, it is also true that there is no *per se* rule that damages are *only* available on the profits attributable specifically to the portion of the product covered by the claimed design, as Dr. David's analysis assumes." (*Id.*) Even if Reverie properly characterizes Dr. David's analysis, the Court finds that such a distinction does not warrant exclusion. Such an argument is better suited for cross-examination rather than the wholesale exclusion of testimony. Accordingly, the Court will decline to exclude Dr. David's non-infringement opinions on the D553 Patent.

**Second,** Reverie argues that Dr. David's opinions on what products or features might constitute non-infringing alternatives to the accused products should be excluded because he fails to provide any analysis of "what the market for the accused products is or how or why the alternatives . . . would be acceptable to the consumers in that particular market." (*Id.* at 22.) It further alleges, without citing authority, that to assert non-infringing alternatives, one must show both the availability of such a product and its acceptability to consumers as a substitute. (*Id.*)

The case relied upon by Tempur is persuasive. In *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 393858, at *4 (N.D. Cal. Jan. 29, 2015), the district court found that the moving party's argument that any non-infringing alternatives must be "market acceptable" failed because the expert's opinion "was that the alternatives would result in

performance that was imperceptible to Box's end users." Thus, that opinion "is clearly a technical opinion within [the expert's] expertise, despite the fact that, if true, it also means that the substitutes would necessarily be acceptable to Box's customers." *Id.* Here, the Court finds that, similar to *Open Text S.A.*, Dr. David's opinions on non-infringing alternatives involve them having substantially similar performances to the accused products and, accordingly, were within the scope of his expertise. The Court will decline to exclude his opinions on non-infringing alternatives.

### iv.    Opinions Outside the Scope of Expertise

Reverie argues that Dr. David opines on topics outside his scope of expertise when he discusses: (1) Reverie's breach of confidentiality claim; and (2) his "empirical observations" about the alleged lack of value of the technology claimed by the accused products. The Court will analyze both arguments in turn.

**First,** Reverie argues that Dr. David's report discloses breach of confidentiality opinions that are outside the scope of his technical expertise. Specifically, Reverie argues that Dr. David's opinions on the Reverie's breach of confidentiality claim is outside his scope of expertise because he is not an attorney. By arguing that Tempur did not breach the confidentiality agreement because "the lift arm would have needed to be confidential prior to December 12, 2012[,]" Reverie claims that Dr. David is offering a legal conclusion rather than a technical opinion because his opinion is based on contract interpretation and the legal requirements for a breach of confidentiality claim. (DE 328-1 at 24.)

Tempur argues Dr. David used his engineering expertise to come to his opinions on the breach of confidentiality claim. It claims that Dr. David used "his extensive engineering background to analyze the Solidworks files Reverie sent to Tempur . . . and review patent applications to determine that the allegedly proprietary lift arm design was disclosed in patent applications . . . prior to the execution of the [confidentiality agreement]." (DE 348 at

17

23.) It asserts that Dr. David is simply responding to Dr. Stevick's opinions, and that if Dr. David's opinions on this matter are excluded, so should Dr. Stevick's. However, Dr. Stevick's opinions are not the subject of this motion and so the Court will decline to address them.

Upon review of the relevant section of Dr. David's report, the Court will grant Reverie's request in part. Dr. David is an engineer, not an attorney. Accordingly, it is outside the scope of his expertise to provide legal conclusions, such as opining whether the lift arm design constituted confidential information under the contract or whether the confidentiality agreement was breached. He can, however, opine on topics such as the designs at issue, relevant patent applications, and whether certain information was readily available to the public and not generally ascertainable by proper means by the public. To opine on the ultimate issue or whether the elements of breach of contract are satisfied takes Dr. David's opinions beyond the scope of his expertise.

**Second,** Reverie argues that Dr. David's "empirical observations" regarding the alleged lack of value of the technology claimed by the accused products should be excluded because they are outside the scope of his expertise. (DE 328-1 at 24-25.) Reverie claims that Dr. David "renders various opinions regarding the 'value' of the technology claimed in the asserted patents based on his non-specialized, non-technical assumptions regarding the experiences of the users and consumers of adjustable beds." (*Id.* at 25.) It further asserts that Dr. David relied on no surveys or studies regarding consumer preferences when making these observations, and that they are simply "unsupported assumptions". (*Id.*)

Tempur, however, argues that Dr. David "is qualified to give opinions regarding how changes to technology will impact user experience." (DE 348 at 31.) It claims that "[c]ontrary to [Reverie's] argument" that Dr. David's conclusion provide no insight beyond what the observations of a normal consumer would be, his conclusions "about what the impact to user experience would be if the accused technology is removed are helpful for the jury to

18

understand the value of the accused technology." (*Id.*) Further, it asserts that Dr. David should be allowed to testify "from a technical perspective" about how changes to the technology of the accused products would impact the final product and that Tempur does not intend to offer testimony regarding "what specifically the user *believes* is important in the final product[.]" (*Id.*)

Upon review of Dr. David's expert report and the paragraphs that Reverie takes issue with (DE 329 at ¶¶ 222, 225, 229, 230, 233, 244, 246, 248), the Court finds only the following sentences to be outside the scope of Dr. David's expertise:



(*Id.* at ¶ 222, 229.)

It is within the scope of Dr. David's expertise for him to opine on what users would experience or perceive when interacting with the claimed or accused products, as well as how specific technology affects the user experience. It is, however, outside the scope of his expertise to opine on what consumers want or find desirable in a final product. The previous two sentences implicate the latter, speculating on what users want in their adjustable beds. Accordingly, the Court will only exclude these two sentences from Dr. David's report.

### D. Tempur' Motion to Strike the Declarations of Martin Rawls-Meehan and Dr. Glen Stevick

In its motion to strike, Tempur argues that the declarations of Martin Rawls-Meehan and Dr. Stevick should be stricken from the record. It claims the following: (1) that Rawls-Meehan, CEO of Reverie, provides contradictory statements to his deposition testimony in his declaration; and (2) that Dr. Stevick offers new opinions not found in his expert reports

nor timely disclosed before the end of expert discovery in his declaration. (DE 367 at 6, 12.) The Court will analyze each argument in turn.

### i.    Rawls-Meehan Testimony

Tempur argues that Rawls-Meehan provides contradictory statements in his declaration when he claims that the confidential design files transferred to Tempur in January 2013 did not show the 7S product. If the Court finds that these statements are not directly contradictory, Tempur argues in the alternative that Rawls-Meehan's declaration is a blatant attempt to create a sham issue of fact. Upon review of the record, the Court finds that Rawls-Meehan's statements directly contradict his deposition testimony and Reverie fails to provide a persuasive justification for the contradiction.

The Sixth Circuit has explained that when a district court considers the admissibility of a post-deposition affidavit at the summary judgment stage, it must first "determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* "If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue." *Id.* (quotation marks and citation omitted).

In Rawls-Meehan's deposition, he was questioned about the confidential design files transferred to Tempur in January 2013. This exchange went as follows:

> Q: …So are you contending that it was the head-up foundation in conjunction with the lift arm, or are you contending — is Reverie contending that the head-up foundation itself was somehow confidential at Reverie and that Tempur-Pedic used it in violation of a confidential obligation?
>
> A: I believe I'm talking about the lift arm itself.

(DE 368-3 at 199:18-200:1.)

> Q: … Do you believe that someone could acquire whatever you think the confidential lift arm design is in the open market? Just go buy a bed today that has that lift arm in it?
>
> A: Has that — has that exact lift arm is what we had done then? I think the lift arm that we provided the actual solids for, right, the step files for, eventually went into the market, yes.
>
> Q: In what products, in what adjustable bases?
>
> A: I believe that it made its way out into the 7S and some of our core like that lift arm made its way out there. …
>
> Q: When was the 7S first publicly available for sale, the Reverie 7S foundation?
>
> A: Around 2013. I don't know the exact date. Around then.

(*Id.* at 206:13-207:8.) Rawls-Meehan further confirmed that he believed the 7S product was the first publicly available product using the lift arm that Reverie contends Tempur used in violation of their confidentiality agreement. (*Id.* at 207:17-25, 208:1-9.)

> However, Rawls-Meehan states the following in his declaration:
>
> 8. I have recently reviewed the specific design files that were transferred to Tempur in January 2013, and they are not files showing the 7S product.
>
> …
>
> 12. The differences between the designs transferred in 2013 and the 7S are material from a functionality standpoint, and the design files transferred in 2013 have a feature set that is clearly distinguishable from the 7S product.

(DE 338-5 at 3.) Reverie argues that these statements are not directly contradictory because Rawls-Meehan "was confused about whether the lift arm depicted in the design files . . . was the exact lift arm in the 7S at the time he made the disclosures." (DE 372 at 4.) Reverie further asserts that Rawls-Meehan submitted his declaration stating that the 7S product was not the subject of the confidential design files because Tempur "did not ask when the lift arm that was contained in the confidential files was itself first on sale[.]" (*Id.*)

The Court finds Reverie's explanation behind Rawls-Meehan's declaration wholly inadequate. The deposition transcript is clear: he believed that the lift arm design at issue

went into the market, and that lift arm design was used in the 7S product. (DE 368-3 at 206:13-207:8.) Rawls-Meehan expressed multiple times that he believed the 7S product used the lift arm detailed in the confidential design files and stood by that belief for the remainder of the deposition. Reverie appears to argue that Tempur should have been more precise with its questions, but it is difficult to find how anything in the cited transcript could require additional clarification. Accordingly, the Court finds that Rawls-Meehan's declaration directly contradicts his sworn deposition testimony.

Further, Reverie has provided no persuasive justification for the filing of Rawls-Meehan's declaration. Reverie states that, "if [Rawls-Meehan] had been shown the design files at issue during his deposition, he would have recalled that these specific design files did not show the 7S product." (DE 372 at 6.) But Rawls-Meehan himself, as the corporate representative of Reverie, had the burden of being prepared for his deposition. To the extent that Reverie alleges that Tempur sought to intentionally confuse Rawls-Meehan, Reverie made no objections during the deposition and thus waived such arguments. Rawls-Meehan made no attempt to correct this alleged misunderstanding until his testimony arose in Tempur's motion for summary judgment. Accordingly, the Court finds that there is no persuasive justification for the filing of Rawls-Meehan's declaration. Because the relatively short declaration consists of statements that are either not substantive or depend on the contradictory claims, the Court will strike the declaration in its entirety.

### ii.    Dr. Stevick Testimony

Tempur argues that certain statements provided in Dr. Stevick's declaration should be stricken for various reasons. The Court will address each argument in turn.

**First,** Tempur argues that Dr. Stevick's opinions regarding the third-party source code for Tempur's bed controllers should be stricken because they are untimely new opinions. (DE 367 at 13.) Specifically, Tempur challenges Dr. Stevick's opinions based on his review of

22

Dr. Goldberg's source code notes found in paragraphs 17, 24, 26-27, and 31 of Dr. Stevick's declaration. It asserts that these opinions were provided "long after the deadline for completion of all expert discovery (July 15, 2022)," thus violating Federal Rule of Civil Procedure 26, and that they should be excluded as untimely under Rule 37. (*Id.*)

Rule 26 states that expert witness disclosures "must be accompanied by a written report" that, among other things, includes "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B), 26(a)(2)(B)(i). Rule 37 instructs that: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Further, the Sixth Circuit has consistently held that district courts have discretion to exclude the untimely-disclosed testimony of an expert witness. *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 753 (6th Cir. 2003) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000)).

Reverie argues that these statements regarding the source code are both timely and not new opinions. (DE 372 at 11.) Reverie points back at Tempur, claiming that it "belatedly produced Dr. Goldberg's notes . . . only on the eve of Dr. Stevick's deposition," which was nearly a month after the disclosure of Dr. Goldberg's report and two months after Dr. Stevick's initial expert report. (*Id.*) Reverie claims that it is proper for its expert to rebut statements made by Tempur's expert after his report was submitted[3] and that nothing in Dr. Stevick's declaration sets forth opinions that were not already disclosed in his expert report.

---

[3] Notably, Tempur points out that the cases that Reverie rely upon (DE 372 at 10-11) each involve rebuttal at trial and not in response to a motion for summary judgment. That fact distinguishes those cases from the instant matter.

(*Id.* at 12.) Reverie explains that Dr. Stevick's statements in his declaration are supplements, made only to clarify his opinions for the benefit of the Court. (*Id.* at 13.)

The Court finds Reverie's argument unconvincing considering the facts in the record. The Court has already found that Reverie was not diligent in seeking access to the source code and meeting scheduling order deadlines. (DE 312 at 4.) Further, the Court is persuaded that Dr. Stevick's declaration is not a clarification but new opinions based on his review of Dr. Goldberg's source code notes. In his deposition, not expert report, Dr. Stevick stated that Dr. Goldberg's notes "certainly back up" his existing opinions. That statement is vague and overbroad. He does not state what these specific existing opinions are or how exactly Dr. Goldberg's notes supported them. This kind of statement cannot permit Reverie to bypass the restrictions on expert disclosure set forth in Rules 26 and 37. Accordingly, the Court will strike paragraphs 17, 24, 26-27, and 31 of Dr. Stevick's declaration as untimely.

**Second,** Tempur argues that Dr. Stevick provides untimely new expert opinions regarding Reverie's breach of contract claim in his declaration. (DE 367 at 15.) It claims that paragraphs 6-10 of the declaration include untimely opinions such as: (1) the alleged difficulty in duplicating the design contained in the design files Reverie sent to Tempur; (2) the benefit of having design files over reviewing the physical product; and (3) what specific information is typically contained within design files. (*Id.*) Tempur asserts that none of these opinions were in Dr. Stevick's report and that he nor Reverie "even attempt to provide any justification for these late disclosures." (*Id.*)

Reverie's response is similar to its previous one—that Dr. Stevick's declaration statements only clarify and supplement opinions made in his expert report. (DE 372 at 14.) The relevant opinions in the expert report state as follows:

█████████████████████████████████████████████

(DE 372 at 14.) Reverie fails to explain why it and Dr. Stevick did not supplement or clarify these opinions before responding to the motion for summary judgment.

Again, Reverie cannot rely on these overbroad opinions to include new expert opinions found in Dr. Stevick's declaration. While Dr. Stevick's expert report touches on the transfer and incorporation of Reverie's design files, the two opinions cited by Reverie say nothing relating to: (1) the difficulty of duplicating detailed design specifications; (2) the benefits and makeup of 3D design files; or (3) the reverse engineering of design files. The Court is further persuaded that Dr. Stevick failed to explain how these new observations apply to the facts at issue. The Court finds that, while consistent with Dr. Stevick's expert report, these opinions found paragraphs 6-10 "significantly expand" upon what was originally opined in Dr. Stevick's report. *See Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13-CV-01043 SPM, 2015 WL 2176964, at *8-9 (E.D. Mo. May 8, 2015) (denying motion to strike expert declaration where the declaration did not contain new factual bases for the expert's opinion and was entirely consistent with opinions in the expert report). Reverie cannot have Dr. Stevick lay out conclusions in his expert report and wait until responding to a motion for summary judgment to supply the reasons for those conclusions. Accordingly, the Court will strike paragraphs 6-10 of Dr. Stevick's declaration as untimely.

**Third,** Tempur argues that paragraphs 18 and 25 of Dr. Stevick's declaration contradict his prior testimony and should be stricken. It appears that Tempur argues for the exclusion of these two paragraphs based only on the argument that they contradict his prior sworn testimony.

In paragraph 18, Dr. Stevick states that Dr. Goldberg's source code notes ████████

█████████████████████████████████████████████

(DE 338-4 at 4.) Tempur claims that this statement contradicts Dr. Stevick's deposition testimony, in which he stated that he ████████████████████████████████████ ████████ (DE 338-10 at 154:17-155:12.)

The Court is not convinced that these statements are directly contradictory. At the time of Dr. Stevick's deposition, the record shows that he had not personally reviewed the source code. Paragraph 18 only confirms Dr. Stevick's understanding of what Dr. Goldberg, who did inspect the source code, believed about the nature of the memory position storage. The Court finds that these opinions are not directly contradictory and that Tempur has not shown how paragraph 18 constitutes an attempt to create a sham fact issue. Accordingly, the Court will decline to strike paragraph 18 as contradictory testimony.

In Paragraph 25, Dr. Stevick states that Dr. Goldberg's source code notes ████████ ████████████████████████████████████████ (DE 338-4 at 5.) Tempur claims that this statement is directly contradictory to Dr. Stevick's deposition testimony, in which it claims that he testified that ████████████████████████████████ ████████████████████████ (DE 338-10 at 146:19-21.) However, a review of Dr. Stevick's deposition testimony suggests otherwise.

Dr. Stevick, when asked about ████████████████████████████████ ████████████ explained that the ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ (*Id.* at 133:2-7 (emphasis added).) When asked about ████████████████████████████, Dr. Stevick clarified: ████ ████████████████████████████████████████████████████ ████████████████████ (*Id.* at 133:16-19 (emphasis added).) He continues to make this assertion in his deposition. (*Id.* at 139:19-21 ████████████ ████████████████████████, 141:24-142:2 ████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████ 147:20-22 █████████████████

██████████████████████████████████████████████████████████

███████████████ Dr. Stevick is consistent in his assertion that ████████████

████████████████████████████. This consistency further demonstrates that this statement was not an attempt to create a sham issue of fact. Accordingly, the Court will decline to strike paragraph 25 as contradictory testimony.

However, further in Tempur's motion to strike, it also argues that paragraph 25 should be stricken because it's an untimely new opinion and is based on guesswork. (DE 367 at 18.) The former argument holds merit. For the same reasons the Court struck paragraphs 17, 24, 26-27, 31, the Court will strike paragraph 25 of Dr. Stevick's declaration. The Court will decline to address whether paragraph 25 constitutes impermissible guesswork.

**Fourth,** Tempur argues that paragraphs 20 and 32 of Dr. Stevick's declaration are untimely new opinions that are based on improper speculation and guesswork. (*Id.*) From the outset, the Court is unconvinced by Reverie's argument that these issues should have been raised in a *Daubert* motion. Reverie may have filed a declaration with the same opinions when challenging Tempur's previously mooted motion for summary judgment, but that does not guarantee ripeness for a *Daubert* motion. Indeed, it is unreasonable to require a party to "bring an unripe *Daubert* motion to exclude expert opinions it believes might be forthcoming in its opponent's summary judgment opposition." (DE 382 at 19.) Accordingly, the Court will turn to the substance of Tempur's "guesswork" challenges against these portions of Dr. Stevick's declaration.

In paragraph 20 and 32, Dr. Stevick opines on: (1) ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████. (DE

338-4 at 4-5.) Tempur argues that these opinions are "pure speculation" because Dr. Stevick did not review the source code. (DE 367 at 19.) But these opinions are based on Dr. Stevick's professional experience and his review of Dr. Goldberg's notes. Further, he is not asserting these opinions as definitive; he is simply stating that based on his review of Dr. Goldberg's notes and his professional knowledge of bedding technology, it is likely that the accused products incorporated certain techniques and/or software. This is not the "sheer speculation" that the Sixth Circuit finds lacks sufficient reliability. *See Samuels v. Allstate Prop. & Cas. Ins. Co.*, 310 F. Supp. 3d 847, 866 (E.D. Mich. 2018) ("The Sixth Circuit has noted that absolute certainty is not required of an expert but that sheer speculation, regardless of the qualifications of the speculator, lacks sufficient reliability."). The Court finds that the foundation of these opinions are sufficiently reliable and that Tempur's arguments go towards the weight of Dr. Stevick's opinions, not their admissibility.

The Court will now address whether paragraphs 20 and 32 are untimely new opinions. Reverie concedes that these paragraphs "are Dr. Stevick's opinions regarding Dr. Goldberg's notes and supplement his preexisting opinion." (DE 372 at 18.) In other words, Reverie appears to argue that these paragraphs are proper opinions because they clarify Dr. Stevick's deposition testimony that Dr. Goldberg's notes about the source code "certainly back up" his existing opinions. Reverie also fail to point out any specific opinions in Dr. Stevick's expert report that these paragraphs would allegedly supplement. As the Court previously found in striking paragraphs 17, 24, 26-27, and 31 of Dr. Stevick's declaration, Reverie's argument does not save these untimely new opinions. Dr. Stevick's vague statement about Dr. Goldberg's notes during his deposition cannot serve as justification for these new opinions. Accordingly, the Court will strike paragraphs 20 and 32 as untimely.

### E.    Motions for Summary Judgment

Also pending before the Court are the parties' respective motions for summary judgment. (DEs 315/316, 330.) The Court finds it appropriate to allow the parties to make adjustments with the benefit of the Court's ruling and refile their motions. Accordingly, the Court will deny the pending motions for summary judgment without prejudice.

## II.     Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Tempur's motion to exclude the expert testimony of Dr. Glen Stevick (DE 319/320) is DENIED;

2) Reverie's motion to exclude the expert testimony of Dr. Benjamin Goldberg (DE 326) is DENIED;

3) Reverie's motion to exclude the expert testimony of Dr. Yadin David (DE 328) is GRANTED IN PART as follows:

   a) Tempur SHALL MOVE for supplemental claim construction on any claims it believes are in genuine dispute;

   b) Dr. David's opinions on whether the elements of Reverie's breach of the confidentiality agreement claim are satisfied are EXCLUDED; and

   c) Dr. David's opinions on what consumers want or find desirable in a final product (DE 329 at ¶¶ 222, 229) are EXCLUDED;

4) Tempur's motion to strike the declarations of Martin Rawls-Meehan and Dr. Glen Stevick (DE 367/368) is GRANTED IN PART, in that Martin Rawls-Meehan's declaration is STRICKEN in its entirety and paragraphs 6-10, 17, 20, 24, 26-27, 31, and 32 of Dr. Glen Stevick's declaration are STRICKEN;

5) the parties' motions for summary judgment (DEs 315/316, 330) are DENIED without prejudice. The parties may adjust and refile their motion by May 1, 2025 with the benefit of the Court's above ruling; and

6) the Clerk of the Court is DIRECTED TO FILE a redacted copy of this opinion in the record and an unredacted copy under seal.

This 31st day of March, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY